State ex. rel. Howie Dist. Atty. *v.* Brantley, State Game and Fish Commissioner.
Ex Parte Robinson.

[73 South. 795, In banc.]

1. Fish. *Game. Statute. Validity. Construction under void statute.*
    A majority of the supreme court are agreed that chapter 99, Laws 1916, should not be regarded in force and effect in Mississippi, and from this it necessarily follows that there is no such public office now as that of state game and fish commissioner.

2. Same.
    Laws 1916, chapter 99, being void, no conviction thereunder can be sustained.

Appeal from the circuit court of Hinds county.
Hon. W. H. Potter, Judge.

Two cases, one *quo warranto,* by the state on relation of J. H. Howie, district attorney, against Z. A. Brantley, game and fish commissioner of the state, and the other arising under *habeas corpus* by Sim Robinson, after conviction of hunting without license. In the first case

the writ prayed for was issued, but judgment was entered in favor of Brantly, and the relator appeals. In the first case, judgment set aside and vacated and judgment entered ousting defendant. In the second case, judgment set aside and judgment for relator entered, discharging him from custody.

The facts are fully stated in the opinion of the court.

*Lamar F. Easterling,* Assistant Attorney-General for appellant.

*J. B. Harris,* for appellee.

In case No. 19464: *J. M. Vardaman,* for relator.

*Ross A. Collins,* Attorney-General, opposed.

PER CURIAM.

These cases were argued and submitted together, and present the same legal questions. The first cause, No. 19461, is an appeal from a judgment in *quo warranto* on the information of the district attorney against appellee, Z. A. Brantley, game and fish commissioner of the state. The petition for the writ averred that appellee was unlawfully holding and exercising the functions of a public office, was claiming the right to an office in the state capitol, and was demanding hunters' licenses and threatening to impose fines upon persons violating chapter 99, Laws 1916, known as the "Game and Fish Law."

In the second cause, No. 19464, Sim Robinson was convicted before the police justice of the city of Jackson for hunting without the license required by said game and fish law. After conviction, he sued out a writ of *habeas corpus* before the circuit court of the first district of Hinds county. The writ was denied, and Robinson appeals from the judgment, so denying relief by *habeas corpus.*

The real issue presented by the appeal in the first case, the one vital question for decision, is whether Mr. Brantley legally holds and occupies the public office of state game and fish commissioner. The controlling question in the *habeas corpus* case is whether appellant Robinson was convicted of crime without authority of law. The determination of the main question in each case must be controlled by the further question whether the new game and fish statute above mentioned is constitutional, and therefore is a valid, subsisting law, and whether the law, if constitutional, is now in force and effect. If there is no such law now in force and effect, then it follows that there is no public office of state game and fish commissioner, and, furthermore, no one could be convicted for violating any of the provisions of such law.

The argument of these cases is directed to two general legal propositions. The first general proposition turns upon the question: Is chapter 99, Laws 1916, as drafted and prepared by the legislature, unconstitutional and void on its face? The second general contention is that the statute in question, if a valid law, has been repealed or nullified by a vote of the people, acting under the so-called initiative and referendum amendment to the Constitution. The discussion of each of these two general propositions has necessarily directed the attention of counsel and court to many specific points of attack on the law in question.

There are several reasons advanced why chapter 99, Laws of 1916, contravenes our state Constitution, and, accordingly, why the said law should be regarded as unconstitutional and void on its face. It is suggested that the statute violates section 20 and 175 of the state Constitution. These sections of our Constitution provide that no person shall be elected or appointed to office in this state for life or during good behavior, but the term of all offices shall be for some specified period, and that officers shall be liable to indictment for willful

neglect of duty or misdemeanor in office, and upon conviction shall be removed from office. It is contended that the county wardens and deputies provided for by the game and fish law are public officers, and that section 14 of the act authorizes their appointment and removal by the state game and fish commissioner, and that the authority to remove may be exercised by the state game and fish commissioner at any time, contrary to the provisions of the Constitution. It is further contended that the statute violates section 261 of the Constitution, which reads as follows:

"The expenses of criminal prosecutions, except those before justices of the peace, shall be borne by the county in which such prosecutions shall be begun; and all net fines and forfeitures shall be paid into the treasury of such county. Defendants, in cases of conviction, may be taxed with the costs."

Reference to section 17 of the act will show that each county warden is to receive one-half of all fines, forfeitures, and penalties collected in the county in which he holds office, for violations of the game law, and the remaining one-half is to be forwarded on the first day of each month to the state treasurer to be credited to the game and fish protection fund provided for by the statute. It is contended that the scheme provided by this new game and fish law, whereby the net fines and forfeitures are to be sent to the state capitol and paid into the state treasury to the credit of the game and fish protection fund, manifestly violates the plain provisions of section 261 of the Constitution.

Section 18 of the statute provides for a county license of two dollars for each resident hunter, a state license of five dollars for each resident hunter, and a license of fifteen dollars for each nonresident hunter. By section 20 of the act nonresidents are prohibited from trapping in the state of Mississippi. It is contended that section 23 permits resident owners to hunt on their own premises, without license, and denies to

nonresident hunters the right to hunt upon their own land without first paying for and obtaining a license. From these provisions it is suggested that the law unlawfully discriminates against nonresidents, in that it denies them the right to trap upon their own plantations or lands, and denies them the privilege of hunting upon their own lands without first obtaining a license; that every one has a qualified interest in the game found upon his own lands, and has a natural right to hunt, trap, and fish thereon, and that this right inheres in him by reason of his ownership of the soil.

It is further contended that, under section 18 of the game law, all minor members of families may hunt under the one license issued to the head of the family, and that, accordingly this unlawfully discriminates against certain other hunters. It is suggested that a large portion of the hunting and fishing is done by young men or boys under the age of twenty-one years, who, under the provisions of this act, would not be required to pay a license if they are living under the parental roof; that the amount of game which every hunter is authorized to take is limited; that under this plan a father with many sons could take a much larger portion of game and fish than many other heads of families; that the orphan boy in many instances could not avail himself of the provision of hunting under a license issued to the head of a family, but, on the contrary, would be required to pay the license. From all this it is contended that, although the fish and game equitably belongs to all the people of the state, under the requirements of this new statute there is unlawful discrimination against certain classes of citizens of our own commonwealth.

The further question presents itself, that is, if the statute under attack attempts unlawfully to divert the fines and forfeitures from the various counties and deposit them in the state treasury to the credit of the game protection fund, contrary to the state Constitu-

tion, and if the licenses provided for work an unlawful discrimination against certain classes of citizens, that then no adequate revenue is provided for maintaining the office of state game and fish commissioner, for paying the extra expenses of county wardens, and for enforcing the provisions of the statute; and, if this be the true situation, then the act does not provide a workable plan and harmonious scheme for protecting the game and fish of Mississippi, and that accordingly, the whole act should be declared unconstitutional and void. It is suggested that the legislature would not have enacted this law without the means for paying the officers charged with the duty of enforcing it; that the legislature would not have enacted it with the other objectionable features indicated; that the law is so deficient in many important particulars that the whole act should be struck down as inoperative and void.

Many reasons are also assigned why chapter 99, Laws of 1916, has not been nullified by a referendum vote of the people. On this branch of the discussion, several reasons are assigned why the referendum amendment to the Constitution has not been legally adopted and inserted as a part of our organic law. Briefly stated, the contentions are that the initiative and referendum amendment to the Constitution is void on its face, because the amendment, purporting to be only one amendment, in fact embraces two separate and distinct powers and amendments to the state Constitution, to wit the power of the people themselves to make or nullify a statutory law; and, second, the power of the people to initiate a constitutional amendment. It is furthermore claimed that this amendment did not receive a majority of the qualified electors voting at the general election at which the people undertook to adopt or approve the initiative amendment, contrary to the provisions of section 273 of our state Constitution, requiring every amendment to our organic law to re-

ceive "a majority of the qualified electors voting" at the election.

The members of this court have given to the many delicate and constitutional questions presented by these records the most careful thought and consideration. After mature deliberation, a majority of the court are convinced beyond doubt that the judgment of the learned circuit court is erroneous, and should be reversed. The several members of the court are not agreed, however, upon any one reason that should be assigned why the judgment of the lower court should be reversed. Some of the justices are of the opinion that the game and fish statute is unconstitutional on its face, and therefore inoperative and void; and they reach this conclusion regardless of the initiative and referendum amendment to the Constitution and the vote of the people thereunder. Other members of the court are of the opinion that the statute in question has been legally voted out by the people, and therefore is no longer in force and effect. Inasmuch as a majority of the court are not agreed upon any one of the many constitutional points argued and considered, and therefore no legal principle can be conclusively settled at this time, we shall forego or waive any elaborate discussion of the merits or demerits of any one of the many contentions made or constitutional questions argued. As stated by the Wisconsin court, through

MARSHALL, J.:

"A situation so extraordinary rarely occurs in judicial work. That it should move judicial minds to exhaust all reasonable efforts for harmony, as it has in this case, is most natural." Will of McNaughton; *Frane* v. *Plumb,* 138 Wis. 179, 118 N. W. 997, 120 N. W. 288.

The majority of the court are agreed that chapter 99, Laws of 1916, should not now be regarded in force and effect in Mississippi; and from this it necessarily

follows that there is no such public office now as that of state game and fish commissioner. It is the judgment of the court, therefore, that the writ of *quo warranto* was properly issued; that the demurrer filed by the district attorney to the special plea in bar of the defendant was improperly sustained; that the judgment entered in favor of Mr. Brantley was erroneous, and that this judgment should be set aside and vacated and a judgment entered here, declaring that no such office as state game and fish commissioner now exists, and that appellee should be ousted of and restrained from exercising the functions of any such office. We are also of the opinion that the judgment of the learned circuit court, denying the petition of *habeas corpus* to Sim Robinson, should be set aside, and, there being no dispute as to the facts, that judgment should be entered here in favor of Sim Robinson, relieving him from the conviction mentioned, and discharging him from custody. So ordered.

SYKES, J., dissents.