GUGGENHEIMER AND COMPANY, *Appellant,* v. W. M. DAVIDSON, *Appellee.*

Opinion Filed December 11, 1917.

1. Where the legal title to land is held by a wife on a secret trust for her husband the land is not subject to levy and

sale under an execution at law issued upon a judgment re-
covered against the husband, but is an equitable asset and
can be reached only by proper proceedings in a court of
equity.

2.   Where it appears from the record in a chancery case that
the Chancellor clearly erred in rendering a decree which
was based upon the testimony of witnesses who were not
personally before him, the decree should be reversed.

Appeal from Circuit Court for Columbia County, M. F.
Horne, Judge.

Decree reversed.

*T. B. Ellis, Jr.,* for Appellant;

*R. W. Farnell,* for Appellee.

Ellis, J.—W. M. Davidson brought suit in the Circuit
Court for Columbia County to foreclose a mortgage given·
by D. M. Davidson and wife to Frank Adams upon cer-
tain lands lying in Columbia and Alachua counties to
secure the payment of certain promissory notes.   The de-
fendants named were D. M. Davidson and wife; C. R.
Edmondson and wife; D. M. Davidson, Jr.; J. W. Clark
and wife, and Guggenheimer and Company, a corporation.

Guggenheimer and Company answered the bill, after
which the complainant obtaining leave of the court filed
an amended bill of complaint.   The defendant Guggen
heimer and Company moved to strike it, the motion was
overruled, and upon appeal the order was reversed by this
court.   Guggenheimer & Co. v. Davidson, 62 Fla. 490, 56
South. Rep. 801.

The substance of the allegations of the bill is that the
notes and mortgage were duly assigned to the complainant
and were owned by him; that certain of the notes had
been paid, but that others were due and had not been paid;

that the title to the lands described in the mortgage was in the wife of D. M. Davidson who with her husband executed the mortgage, but who had since died; and that Eva Davidson, wife of D. M. Davidson, and Guggenheimer and Company claimed some interest in the lands. The prayer was for an accounting, that the amount found to be due to the complainant be required to be paid or the premises sold, and for general relief.

Guggenheimer and Company answered the bill, denying that Mrs. Maggie Davidson who executed the mortgage with her husband had any right or title to the lands mortgaged, and averred that the lands were bought by D. M. Davidson and that he gave his notes to Frank Adams for the purchase price; denied that any of the notes had not been paid, or that Frank Adams had assigned them to the complainant, and denied that complainant was the owner of them or of the mortgage; averred that the notes had been paid to Frank Adams by D. M. Davidson, through the complainant as his agent, and that the alleged assignment of the notes and mortgage to the complainant was procured by false representations on the part of both complainant and D. M. Davidson. The answer averred that Guggenheimer and Company had title to the lands located in Alachua and Columbia counties obtained by deeds from the sheriffs of those counties dated in 1910, duly made after sale under execution issuing out of the Circuit Court for those counties upon unsatisfied judgments against D. M. Davidson; that the complainant had cut from the lands large quantities of cypress logs and timber since the defendant D. M. Davidson had purchased the lands, and that if complainant paid any of the notes it was from the proceeds of the sale of the timber, and the Guggenheimer Company is entitled to have credit for the money so paid against the indebtedness represented by the

notes.    There was incorporated in the answer a demurrer
to the bill for want of equity.

Guggenheimer and Company then filed a cross-bill,
naming as defendants W. M. Davidson, the complainant in
the original bill, and D. M. Davidson, D. M. Davidson, Jr.,
J. W. Clark and wife, and C. R. Edmondson and his wife,
defendants in the original bill.    The cross-bill recited the
allegations of the original bill and alleged in substance
that in 1908 Frank Adams and wife conveyed by deed to
Mrs. Maggie Davidson the lands described and other lands
subject to a lease of cypress timber which Adams and
wife had previously executed to W. M. Davidson; that D.
M. Davidson executed and delivered to Adams twenty-five
notes aggregating the sum of $2,428.00 in payment for the
land, and Davidson and his wife executed the said mort-
gage to secure the payment of those notes; that Mrs.
Maggie Davidson died about one month later, leaving sur-
viving her as heirs at law Fannie Clark, Emma Edmond-
son, D. M. Davidson, Jr., D. M. Davidson and W. M. Da-
vidson; that the lands were bought by D. M. Davidson, but
the deed was made to his wife to avoid the payment of a
certain judgment which Guggenheimer and Company held
aganist him; that the judgment was obtained some years
before in Alachua county, and in 1909 a transcript of it
was recorded in Columbia county; that under an execu-
tion issuing upon the judgment the lands in Alachua
county were sold and the complainant Guggenheimer and
Company became the purchasers, and in 1910 the sheriff
made and executed a deed to complainant therefor; that
certain lands in Columbia county were also sold under
the execution and the cross-complainant became the pur-
chaser; that the lease which W. M. Davidson held expired
in August, 1908, but that after the expiration of the
leases he nevertheless continued to cut timber from the

land, and that he is indebted to D. M. Davidson for the value of such timber, except that cut from a certain eighty acres in Section 22, T. 7 S. R. 17 E., cut between the dates of the expiration of the leases and the dates of the sheriff's deeds to cross-complainant; that W. M. Davidson had paid to Adams some money on the notes due by D. M. Davidson, but it was from the proceeds of the sale of the timber cut from the lands after the expiration of the leases, or from money due on that account; that W. M. Davidson knew of the purchase of the lands by D. M. Davidson; that the lands in Alachua and Columbia counties are contiguous and the timber constitutes its chief value; that W. M. Davidson continues to cut and remove the timber therefrom, and that he is insolvent. The cross-bill prays that the deed from Adams and wife to Maggie Davidson dated June, 1908, be reformed so that D. M. Davidson may be named as the grantee, and that the cross-complainant may be decreed to be the owner of the lands under the sheriffs' deeds; that if there is anything due on the notes given by D. M. Davidson for the land that the cross-complainant may be allowed to redeem the lands from this lease; that the other defendants be restrained from asserting any title to the lands. Certain interrogatories were propounded, the first four W. M. Davidson was required to answer, and Adams was required to answer the third and fourth. These inquired as to the amount of cypress and other timber W. M. Davidson had cut from the lands, except the eighty acres mentioned, since the expiration of the leases; the amounts paid to Adams by W. M. Davidson on the D. M. Davidson notes, and when and how they were paid. An accounting was also prayed for from W. M. Davidson as to the value of the timber cut by him from the lands since the expiration of the leases, and that the amount found to be due be ap-

plied on the notes held by W. M. Davidson, and for an injunction restraining W. M. Davidson and his employees from cutting and removing the timber from the lands.

The defendants to the cross-bill demurred to the bill, which upon motion was stricken from the files and the court ordered that the cross-bill be taken as confessed against all the defendants except C. R. Edmondson. By agreement between solicitors this order was vacated and the defendants allowed to answer.

Although Adams and wife seem not to have been made parties defendant to the cross-bill, they filed an answer admitting the execution of the deed to Maggie Davidson; that the notes given for the purchase price of the land have been paid, but is unable to state who paid them because they were placed in a bank for collection and paid through it; and aver no knowledge of the matters alleged in the bill.

W. M. Davidson answered the cross-bill averring that he purchased the land from Adams and wife and paid them for the same; denied that either D. M. Davidson or his wife Maggie were the *actual or equitable* owners, or that the deed was made in Maggie Davidson's name to avoid the payment by D. M. Davidson of the judgment mentioned in the cross-bill; but that the fact was, he W. M. Davidson, was the real purchaser "who being young and engaged in large business desired, although solvent," to "protect himself from some untold or unforseen business reverses," and further to protect his mother in case of accident to or death of himself, and that the notes were executed by D. M. Davidson for the purchase price of the land, that Adams might have "a valid paper." In explanation of this averment the answer recites that: "The note of a man that defendant knew, and so did Mr.

Adams, that a married woman's note was void, but said notes were executed by her husband D. M. Davidson, while the deed was procured to be made by this defendant to his mother when in truth and in fact neither his mother nor his father had any actual interest in said land." The answer avers that the defendant has no knowledge of the judgment and sheriffs' deeds, denies that cross-complainant or any of the other defendants have any title or interest in the lands; averred his right to cut the timber from the lands, and admitted that he had paid ".Adams and taken up all of the outstanding notes given him. the said Frank Adams, by D. M. Davidson for the purchase price of said land, and in lieu of said payment the said Frank Adams transferred and assigned said mortgage to this defendant, which defendant now holds and is seeking by his original bill to foreclose; that said money was paid Frank Adams for said notes and mortgage out of defendant's, and with defendant's own means, and not out of any means or funds belonging to D. M. Davidson or any one else." Avers that he, W. M. Davidson, is the owner of the land as well as the mortgage. The answer was signed by defendant's solicitor and sworn to by W. M. Davidson. Certain exceptions were filed to the answer, which were not allowed, and certain others sustained. These latter were unimportant and need not be discussed.

No answers were filed ,as it appears from the record, by the other cross-defendants, and no replications were filed to the answers to the original or cross-bills.

An examiner was named by agreement of parties to take the testimony and report the same. On the 14th of November, 1914, the .examiner filed his report. In this report the examiner undertook to report certain "findings" of his own: First, he found the equities from the

pleadings, exhibits and testimony to be with the complainant in the original bill, and with "the defendant" in the cross-bill, and against "D. M. Davidson et al. defendants in original bill, and against Guggenheimer and Company complainants in the cross-bill;" second, that the allegations of the original bill were sustained and that D. M. Davidson is due to the complainant W. M. Davidson on account of the notes and mortgage the sum of $4064.68, and that a lien "is established upon the lands and property included in the mortgage to satisfy said amount;" that the allegations of the cross-bill were not established, and finds "against the contentions of the matters and things set up by the complainant in the cross-bill;" that the mortgage provided for attorneys fees, which should be fixed by the court; costs were found to be justly assessable against D. M. Davidson et al. in the original bill and Guggenheimer and Company in the cross-bill to be "prorated according to the costs incurred in the pleadings." The answer of Frank Adams and wife was found to be sufficient in equity and they were dismissed with costs; that the complainant was entitled to a decree of foreclosure against D. M. Davidson and wife, Edmonson and wife, D. M. Davidson, Jr., Clark and wife and Guggenheimer and Company, "foreclosing all their right, title and interest, and also equity of redemption in and to the lands described in said mortgage sought to be foreclosed by the suit."

The judge rendered a final decree finding the allegations of the original bill to be true, and that the equities were with the complainant W. M. Davidson in the original bill, and against the complainant in the cross-bill; that there "is due upon the notes and mortgage mentioned in the original bill to the complainant W. M. Davidson as follows: For principal $828.00 and $538.20 for interest; total

$1366.20." It decrees that the "defendants or either of them in said bill pay to the complainant W. M. Davidson within twenty days from the date of this decree the said sum of $1366.20 as principal and interest in said cause, and also the further sum of $325.00 which is hereby allowed by the court to the complainant W. M. Davidson as a reasonable attorney's fee for the foreclosure of said mortgage, and also the costs of this suit to be paid by said defendants in original bill." In default of the payment of the amount found to be due the land should be sold at public outcry for cash, and that the "Special Master heretofore appointed in said cause execute the decree." The equities of the cross-bill were found to be with the cross-defendants, and the cross-bill was dismissed at the costs of the cross-complainants.

Guggenheimer and Company appealed from this decree, and assigned eleven errors. From the view we take of the case it is only necessary to consider the first assignment, which is that the judge erred in deciding that the equities were with the complainant in the original bill, and against the complainant in the cross-bill.

We have at some length set out the substance of the pleadings in the case to the end that the circumstances surrounding the transactions and the transactions themselves as they were seen and understood by the parties interested might be shown.

From the pleadings in the case it is seen that only three persons appear to be interested in the litigation, viz, W. M. Davidson, D. M. Davidson and Guggenheimer and Company. The facts as shown by the pleadings are as follows: In June, 1908, the deed from Adams and wife was made to Maggie Davidson. It appears that so far as she was concerned she had no interest in the property, paid no consideration for it, had no right to it, and

merely permitted her name to be used as grantee; that D. M. Davidson executed the notes for part of the purchase money, twenty-four hundred and twenty-eight dollars out of the twenty-nine hundred and twenty-eight dollars paid; that about four years prior to this transaction Guggenheimer and Company obtained a judgment in Alachua county against D. M. Davidson and his copartner B. H. Powell for four hundred and two dollars and fifty-one cents and costs of court; that in 1909 a transcript of that judgment was entered of record in Columbia county under the statute; that the lands in Alachua county were levied upon and sold in May, 1910, under an execution issued upon this judgment, and on October 3, 1910, the land in Columbia county was levied on and sold at public sale under execution issued upon the judgment, and Guggenheimer and Company became the purchaser; that sheriffs' deeds were executed and delivered to the corporation purporting to convey said lands.

These sheriffs' deeds however conveyed to Guggenheimer and Company no title, as under the decisions of this court, if Mrs. Maggie Davidson held the title to the lands on a secret trust for her husband D. M. Davidson, the judgment debtor, the land was not subject to levy and sale under an execution at law upon a judgment recovered against the debtor, but is an equitable asset to be reached only in equity.    See Macfarlane v. Dorsey, 49 Fla. 341, 38 South. Rep. 512; Thalheimer Bros. v. Tischler, 55 Fla. 796, 46 South. Rep. 514.

It also appears from the pleadings that W. M. Davidson knew about the purchase of the land from Adams, the giving of the notes by D. M. Davidson, and the execution of the deed to Mrs. Maggie Davidson and the mortgage back from her and her husband to Adams.    W. M. David-

son's answer to the cross-bill and the allegations of his original bill are inconsistent, because if he is the real owner of the land, if it was held by his mother on a secret trust for him partly to avoid the exigencies of business entanglements as he admitted, and that the notes of D. M. Davidson were a mere subterfuge and fraud or pretense, and that W. M. Davidson in fact paid the purchase price of the land, then obviously he acquired nothing by the purchase of the notes and mortgage and his father owed him nothing on the transaction.     According to his own testimony the money which he paid to Adams was the purchase price of the land, and his father had no "money interest whatever" in it.     On cross-examination he said that he had his father as his agent to buy the land for him, and could not recollect how much he paid Adams for the assignment of the notes and mortgage.     Guggenheimer and Company were made defendants with D. M. Davidson to the original bill and the allegation was made that the former and Eva Davidson, the then living wife of D. M. Davidson, had, or claimed an interest in the lands, as purchasers, mortgages, judgment creditors or otherwise, which interests had accrued subsequently to the liens of the mortgage. The bill to foreclose was filed October 26th, 1910, and the assignment of the notes and mortgage was dated August 16th, 1910, which was fifteen days after the last note was due.     According to Davidson's testimony each note had been marked "paid;" the word stamped on them.     Under these circumstances so far as he was concerned the mortgage lien was absorbed in the greater interest which he claimed to have in the land, and the debt due to Adams was extinguished.

The allegations of the cross-bill amounted simply to the charge that D. M. Davidson had acquired the lands and caused the title to be placed in the name of his wife to

avoid the payment of a judgment which Guggenheimer and Company had obtained against him some years before, and that W. M. Davidson knew about the transaction, but was endeavoring by the subterfuge of acquiring the mortgage to defeat Guggenheimer and Company in their effort to reach the asset of D. M. Davidson represented by the land. This allegation would have supported a prayer to subject the land to the judgment lien of Guggenheimer and Company upon the showing that the execution had been returned unsatisfied.

We think that the admissions of the answer of W. M. Davidson to the cross-bill and the testimony in the case clearly show that D. M. Davidson was the equitable owner of the land; that he negotiated with the owner's agent for it; agreed upon the terms; made the first payment in cash; that W. M. Davidson knew about the transaction and was party to the fraud. The purpose of the whole transaction seems to have been to cover up an asset of D. M. Davidson to avoid the payment of a debt in favor of the Guggenheimer and Company judgment. Even if the complainant W. M. Davidson was the purchaser of the land, his purpose in allowing the transaction to take the form it did, was not wholly without criticism. He undertook to so arrange matters that if he "failed" in business he could prevent the subjection of this land, which was paid for as he said out of his business, to the payment of the debts, incurred in his business, by claiming that the land was his mother's, and to give color to the claim could show that his father was the real purchaser if any enterprising or diligent creditor could succeed in showing that Mrs. Maggie Davidson had no means with which to buy the land. On the other hand his father was in position in the event of a misunderstanding with his son to show

that he was really the purchaser, and that his credit alone was pledged in the transaction.

There is a very noticeable difference between the opinion of the Chancellor and the Special Master in the matter of how much was due on the notes and mortgage from D. M. Davidson to W. M. Davidson. The Special Master, who had no authority under the order appointing him to make any findings in the case, but who undertook nevertheless to settle all the rights of the parties to the controversy, thought that the sum of $4,064.68 was due, while the Chancellor thought that only $828.00 was due, with interest. As stated, we think that nothing was due according to the admissions of W. M. Davidson, and that he was not entitled to a foreclosure of the mortgage; that the decree requiring the defendants or either of them in the original bill to pay the debt found to be due was wholly without any foundation to support it, for surely Guggenheimer and Company and the other defendants did not owe it, and according to the complainant W. M. Davidson, the defendant D. M. Davidson did not, for it was really not his debt.

Where it appears from the record in a chancery case that the Chancellor who has based his decree upon the testimony of witnesses who were not before him personally, has clearly erred, the decree should be reversed. McGill v. Chappelle, 71 Fla., 479, 71 South. Rep. 836.

The prayer of the cross-bill was not supported by any allegation in the bill because the theory on which Guggenheimer and Company prayed for the relief sought by them was that they acquired an interest in the land under the sheriffs' deed. We have shown that to be untrue.

The decree of the Chancellor is reversed with directions to dismiss the original and cross-bills without prejudice

on the part of Guggenheimer and Company by proper proceedings in equity to subject the lands to the payment of the judgment against D. M. Davidson.

BROWN, C. J., AND TAYLOR, WHITFIELD AND WEST, J. J., concur.