FIRST STATE BANK OF CLERMONT, a Corporation, *Appellant*, vs. F. H. FITCH and EMMA S. FITCH, *Appellees*.

141 So. 299.

En Banc.

Opinion filed May 6, 1932.

*T. C. Cork,* for Appellant;

No appearance for Appellees.

ANDREWS, Commissioner.—This cause is here upon appeal from an order of the Circuit Court of Lake County sustaining a demurrer to and dismissing amended bill of complaint filed by appellant, who was complainant below, which had for its purpose the setting aside of an alleged fraudulent conveyance.

Briefly stated, the amended bill alleges that defendant F. H. Fitch on November 6, 1925, gave to the Clermont Hills & Lake Company his promissory note in the sum of $1,500.00, payable in one year, and that before maturity and for valuable consideration the note was endorsed in due course to complainant, and that the maker, F. H. Fitch, stated to complainant that it was a valid obligation and would be paid at maturity; that at the time of making said note and the endorsement of it to complainant the defendant F. H. Fitch was the owner and holder as mortgagee of a certain mortgage covering three certain lots in the Town of Clermont, Lake County, Florida, executed by one J. W. Lawhead, to secure the deferred portion of the purchase price of said

property which had theretofore belonged to defendant F. H. Fitch and sold to said Lawhead; that Lawhead failed to pay said mortgage when due on November 6, 1926, and thereafter at his (Fitch's) own instance, an agreement was made with Lawhead whereby Fitch delivered to him a satisfaction of the mortgage in consideration of a quitclaim deed to defendant Emma S. Fitch, wife of F. H. Fitch the mortgagee; that at the time of said transaction the said Fitch was indebted to complainant in the amount stated in the note then past due, and that Fitch owned no other property in this state. The bill further alleges that the only consideration for the said deed made by Lawhead to Mrs. Fitch, was the satisfaction of the mortgage executed by F. H. Fitch, which was made for the purpose of hindering, delaying and defrauding his creditors including complainant; that while the record title is in the name of the said Emma S. Fitch the beneficial interest in fact rests in F. H. Fitch and thus a resulting trust as to his creditors was thereby effected by the conveyance to the wife, Emma S. Fitch.

The amended bill further alleges that:

"Your orator further shows unto the Court that the said note was not paid at maturity and the same is long past due and has not been paid; that your orator has attempted to enforce the collection thereof by bringing a suit in the court of law in the Sixteenth Judicial Circuit in and for Lake County, State of Florida, and attaching the property of the said F. H. Fitch hereinafter described, but that your orator has been unable by such proceeding to enforce the collection of said note for the reason that the interest of the said F. H. Fitch in said property is an equitable interest and not a legal interest, and not subject to attachment; and that the said F. H. Fitch is a nonresident of the State of Florida, and that your orator is unable to obtain any valid personal judgment, or

to enforce the collection of said note in a suit at law in the courts of this State.''

The bill prays that the deed of conveyance to the defendant Emma S. Fitch be adjudged and decreed by this court to be subject and subservient to the debt of complainant against the said F. H. Fitch, and that the property thereby conveyed be made by decree of this court amenable to the payment of said indebtedness.

To the above amended bill defendants duly appeared by attorney, and filed separate demurrers, and for grounds, among others, said demurrers in substance state that it is not made to appear by the bill of complaint that complainant has properly instituted a suit in a court of law for the collection of its claim, nor that any valid judgment has been entered against defendant F. H. Fitch on said debt in any court of law in this state, and that complainant has not stated such a cause as entitles it to any relief in a court of equity.

In the recent case of Bean et al. v. First Nat. Bank of Clearwater, Fla., 135 So. 803, it was held that:

"Where prior to the institution of a suit by way of Creditor's bill, complainants as plaintiffs in a law action had instituted suit by attachment against the debtor defendant, who was a non-resident, and such suit in attachment had resulted in judgment in favor of the plaintiff prior to the final decree in the suit instituted by Creditor's bill, the conditions precedent to the maintaining of a suit by Creditor's bill as provided by Section 3229 Revised General Statutes 1920, Section 5035, Compiled General Laws, 1927, have been met."

This Court had formerly held in the similar suit of Cornwell v. Williford that—

"In a case commenced by attachment in which the defendant resides out of the state, personal service upon the defendant of *notice of the attachment* under the provisions of Section 2122 of the General Statutes

of Florida, 1906, does not give the court jurisdiction of the *person* of *defendant*." (Italics ours).

Cornwell v. Williford, 73 Fla. 205, 73 So. 795.

It seems, therefore, that in a suit commenced by attachment, a court may obtain "jurisdiction of the res" by personal service of notice of such attachment on the defendant "in another state" under section 3423 Rev. Gen. Stat. 1920, (Section 5276 Compiled General Laws 1927), and final judgment may be entered in such attachment suit even though the service of notice does not give the court "jurisdiction of the person" of defendant, such as would permit the entry of a personal judgment in a suit on a note.

The rule is well established in this state that where property is purchased by a debtor and the title is taken in the name of another to avoid creditors the deed to such grantee is subject to be set aside by the creditors.

Hummell vs. Harrington, 92 Fla. 87; 109 So. 320;

Mayer v. Wilkins, 37 Fla. 244; 19 So. 632.

This rule appears to apply more particularly to cases where the title to property is taken in the name of the debtor's wife. In fact it has been held by this court that where property is purchased and paid for by the husband and a "deed taken in the name of the wife, such acts, coupled with an existing indebtedness of the husband, make a prima facie case of fraud;" and, "in such case, the creditor can follow the funds of the debtor and subject the property in the hands of the wife or her legal representatives, unless the presumption is negatived by the condition of the debtor and circumstances at the time, or other rebutting evidence."

Alston et al. vs. Rowles, 13 Fla. 117;

Roper vs. Hackney, 15 Fla. 323;

Florida L. & T. Co. v. Crabb, 45 Fla. 306; 33 So. 523.

In the case of Hummell v. Harrington, supra, this

Court held that where a debtor's wife purchased land in her name "during her husband's indebtedness," that in the absence of clear proof that purchase was with her separate funds, it is presumed that it was made through means furnished by her husband.

See also

Ostend Realty Co. v. Biscayne Realty & Ins. Co., 99 Fla. 1221; 128 So. 643;

Weaver-Loughridge Lumber Co. v. Kirkland, 99 Fla. 427; 126 So. 773;

Guggenheimer & Co. v. Davidson, 74 Fla. 485; 77 So. 266.

This Court has held, however, that real property, even if held by the wife under secret trust for the husband, is not subject to levy and sale under an execution "at law" issued upon a judgment against the husband, but it is an equitable asset, and can be reached only by proper proceedings in a court of equity.

Blackshear Mfg. Co. v. McClenny, 75 Fla. 308; 78 So. 269;

Guggenheimer et al. v. Davidson, 74 Fla. 485, 77 So. 266.

It is seen, therefore, that a judgment in an attachment suit at law would not reach the property in the instant case standing in the name of the wife.

Directing our attention now to what appears to be a new proposition in equity in this state; we find there are some *exceptions* to the general rule that a creditor must first obtain the entry of a judgment at law on his debt or claim before a decree may be granted to set aside a fraudulent conveyance which has been effected by the debtor.

In 27 C. J., 731, the rule is stated that:

"Although there is some authority to the contrary, it is generally held that, if in addition to the fact of being a non-resident, the debtor has no property in

the state where it is sought to set aside the conveyance complained of as fraudulent, it is unnecessary to obtain a judgment at law as a condition precedent to bringing suit."

8 R. C. L. 25.

This rule seems to be based upon the well founded theory that while a judgment and a fruitless execution issued thereon are the best evidence that the legal remedies of the creditor have been exhausted, they are not the only possible means of proof of such fact, and the necessity of resorting to a court of equity may be made otherwise to appear as neither the law or equity require a meaningless form:

"Bona, sed impossibillia non cogit lex."

"Accordingly, while there are some decisions to the contrary, it has been very generally held that the obtaining of a judgment at law as a prerequisite to a suit in equity to set aside the fraudulent conveyance is excused where it would be impossible to recover such a judgment or where the judgment if recovered would be unavailing and offer no remedy."

27 C. J., 730.

In the instant case the allegations of the bill show that an execution at law would if obtained be unavailing, whether based upon a suit on the note or whether upon attachment proceedings, because, in a suit on the note no personal service could be had, and in case of the suit in attachment the lots are found to stand in the name of a person who did not execute the note which constitutes the cause of action.

The general rule is not so strict as to deny to a party the interposition of the equity powers of the court when the situation is such as to render impossible the aid of a court of law to there take the preliminary steps and produce what ordinarily may be treated as the condition precedent, to the application for equitable relief.

National Tradesmens Bank v. Wetmore, 124 N. Y. 241; 26 N. E. 548;

Patchen v. Rofker, 42 N. Y. S. 35; 12 App. Div. 475.

In the case of

Richmond Bank of Commerce, et al. v. McArthur, 256 Fed. 84-85, 167 C. C. A. 326,

it was held that:

"A creditor sufficiently shows that he has no adequate remedy at law, in the jurisdiction in which he seeks equitable relief when he discloses the impossibility of obtaining in that jurisdiction a judgment at law against the debtor, and that the only remedies at law anywhere available have been exhausted without satisfying the demand asserted."

It was held also in

Case v. Bauregard, 101 U. S. 688, 25 L. Ed. 817,

that when the debtor's estate is a mere equitable one which cannot be reached by any proceedings at law, there is no reason for requiring attempts to reach it by legal process; and in the case of

Getzler v. Saroni, 18 Ill. 511, 518,

it was held that if the property be not subject to attachment at law, being an equitable interest only, and personal service cannot be obtained on his debtor, so that he is without remedy at law for the establishment of his debt, he may, in the first instance, go into equity, establish his debt, and have satisfaction out of the equitable interest.

27 C. J. 767, sec. 665.

See also

McCartney v. Bostwick, 32 N. Y. 53;

Wyman v. Wallace, 201 U. S. 230; 50 L. Ed. 738.

In the latter case, the court found that no judgment had been obtained on the note sued upon prior to the institution of the suit in equity, and thereupon held that as one object of the suit in equity was to subject to the

satisfaction of the debt certain property *held in trust,* no judgment at law was a prerequisite.

Probably the first in importance of the equitable maxims is that ''equity will not suffer a wrong to be without a remedy.'' `That there is no wrong without a remedy has been the boast of many of the sages of the law from early times. It must be noted that however just in theory the above maxims may be, they are necessarily subordinate to positive principles and cannot be applied either to subvert established rules of law or to give the courts a jurisdiction hitherto unknown.

10 R. C. L. 378-379, sec. 129.

The authorities are practically unanimous in holding that:

''A fraudulent transfer of property may take the form of a release or cancellation of a debt or claim without consideration or with intent to hinder, delay, or defraud creditors, where choses in action are subject to the claims of creditors.''

27 C. J. 462, sec. 97.

We have no statute or rule in this state prohibiting any creditor, without first obtaining a judgment at law, from bringing suit to set aside conveyances which conveyances under the decisions of this Court are held to be prima facie fraudulent where, as in this case, the debtor is a non-resident with. no other property in this state, and where it is shown that an execution based upon a judgment at law cannot reach him personally or his lands by reason of the title being held in the name of his wife, and where the allegations of the bill show a resulting trust in favor of complainant as creditor. 27 C. J. 432, sec. 50.

In the instant case the personal service of the writ of attachment on the defendant in Texas, and the attempted levy of the attachment upon the lots in question, served no useful purpose, except to show affirmatively

that the property resting in the name of the wife could not be reached by proceedings at law because of the fact that the debtor, F. H. Fitch, had only an ''equitable interest,'' as distinguished from a ''legal title,'' in the lots.

If under the decisions of this Court the transaction alleged in the bill ''make a prima facie case of fraud'' such as permit creditors to subject the property so acquired by the wife to the debts of the husband unless the presumption is negatived by the debtor husband, we can see no good reason why the property so standing in the name of the wife could not in equity be treated, in the absence of any denial as against the sworn allegations of the bill, as a resulting trust resting in the wife in favor of complainant.

If the above conclusions are not in accord with our legal system, there will be available to any temporary sojourner in this State an easy method of defrauding creditors and his acts in doing so permitted under our laws, which are intended to safeguard honest dealings and assure a remedy as against fraud. Good faith is the basis of all dealings and every transfer or conveyance of property by whatever means it may be done are vitiated by fraud.

2 R. C. L. 469, sec. 5.

Under the allegations of the amended bill, which alleges and shows that complainant has exhausted every available legal remedy at law, and has rights of which equity should take cognizance, we reach the conclusion that the said bill as against the demurrers does not fail to show that complainant is entitled to equitable relief; therefore, the decree of the Chancellor sustaining the demurrer to and dismissing the amended bill, is hereby reversed.

PER CURIAM.—The record in this cause having been

considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the court below sustaining the demurrer to and dismissing the amended bill, be, and the same is hereby reversed.

BUFORD, C.J., AND WHITFIELD, ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.