Roper et al. v. Hackney et al.

WILLIAM C. ROPER, ET AL., VS. JAMES S. HACKNEY, ET AL.

1. In an action brought by bill in chancery to subject the real estate of a defendant to sale upon executions to satisfy certain judgments at law, which were obtained upon demands matured and due, while such real estate belonged to the defendant, where it appeared that such defendant has conveyed the property to a third person for a consideration equal to its full value, his wife not uniting with him in the conveyance, or relinquishing her right of dower, and the consideration being paid in three notes of the grantee, due in one, two and three years, respectively, without a mortgage back or other security; and when it further appeared that soon thereafter such grantee reconveyed the same premises to the wife of such grantor, for the same expressed consideration, receiving back the three indentical notes, a small amount of money and some personal property in payment therefor, without any proof that such notes, money and personal property were her separate property : *Held*, that such property would be deemed the property of her husband, that such deeds would be declared and adjudged null and void, and the real estate, thus attempted to be conveyed, made subject to the lien of such judgment creditors.

2. The court decreeing the sale of the real property of a grantor, upon execution issued upon judgments at law, which it had declared a lien upon the property, his conveyance having been adjudged null and void, cannot authorize the sheriff upon such sale to convey the interests of other than the defendants in execution ; nor can it direct the sheriff to put the purchaser of such premises in possession by turning all others out of possession. The purchaser must take such title and right as he may acquire by virtue of the sheriff's sale on execution.

This is an appeal from the Circuit Court of Orange county, Seventh Judicial Circuit.

A statement of the case appears in the opinion of the court.

*Fleming & Daniel* for Respondents.

"A deed, made with the purpose or intent to hinder, delay or defraud creditors, is binding as between the parties, but, *as to creditors, it is deemed to have no lawful existence.*" 6 Fla., 62; also, 1 Story Eq. Juris., Sec. 350, et passim to Sec. 440.

"Inadequacy of price in a sale of property, where the defendant is justly indebted, is a badge of fraud, and, where associated with other circumstances of suspicion, may be conclusive." Barrow vs. Bailey, adm., 5 Fla., 9.

1 Story's Eq. Juris., Sec. 359.: "The conclusion to be drawn from the cases is, that if the party is indebted at the time of the voluntary settlement, it is presumed to be fraudulent in respect to such debts (that is, those antecedently due);" and through the section we also refer to the whole of Chap. VII., Vol. 1, Story's Eq. Juris., to show that voluntary conveyances in favor of wife or children, or other, by a person who is indebted at the time, are in fraud of creditors, and held by the courts to be null and void." See Sec. 369, ib.: "If it be made with intent to defraud or defeat creditors, it will be void, although there may, in strictest sense, be a valuable, nay, an adequate consideration."

"When property is purchased and paid for by the husband, and the deed is taken in the name of the wife, such acts, coupled with an existing indebtedness of the husband, makes a *prima facie* case of fraud." 13 Fla., 117.

In the trial of the right of property acquired by a married woman through a purchaser, there must be proof that it was made with her separate funds; otherwise, the presumption is that it was through means furnished by her husband. 8 Fla., 136.

In the case at bar there is no attempt made to prove that the property was purchased with the wife's separate funds.

"A debtor in embarrassed circumstances will not be permitted to make a voluntary assignment, or gift of his property, to the injury and detriment of his *bona fide* creditors." 5 Fla., 430.

In the case above cited the gift was to the wife. See also 13 Fla., 117, before cited, in which the Supreme Court take up this whole subject, and examine it fully, sustaining the previous decisions of our Supreme Court that the presumptions are against the exclusion of the wife's property;

Roper et al. v. Hackney et al.

that when a husband purchases real estate, taking the deed in the name of his wife, his declaration that the purchase is made at the request of his wife, and that the money paid is his wife's, is not sufficient to establish a purchase with funds belonging to the separate estate of the wife; and that the onus of proof lies on those claiming, under the wife, to show that the funds used belonged to her separate estate.

We claim that, there being no words used in the conveyance from Thomas showing an intention to establish a separate use in Mrs. Hackney, the property is subject to her husband's debts.

"An intention, clearly manifested, to create a separate estate, has always been deemed necessary in our courts." (The language employed must be suitable.) Schoulus' Domestic Relations, p. 208; and see the whole of Chaps. X. and XI. of this admirable work on the subject under investigation, where the whole matter will be found exhaustively and most clearly treated.

"When a gift of personal property to the wife during coverture is established, it is presumed, in the absence of testimony to the contrary, to be a gift as her general and not her separate property." 13 Fla., 118.

"It must appear from the instrument that the property was to be the separate property of the wife." 5 Fla., 277; 5 Fla., 430; 8 Fla., 107–117.

But we take the further position, that even though no fraud be proved, and the conveyance from Thomas to Mary J. Hackney be sufficient to vest a separate estate in her, the property is still subject to the debts of the husband, James S. Hackney, because of the failure to record it within the time prescribed by the statute. See Act of March 6, 1845, Sec. 6; Thomp. Digest, 221–2.

In this State, by statute, a married woman may acquire a separate and independent title to both real and personal property, during coverture, by bequest, devise, gift, purchase, or distribution, subject, however, to he same be-

coming liable to the debts of the husband, unless an inventory thereof is filed and recorded within six months from the time the title vests in her, as specified in the statute. The record of title papers particularly describing the property given to the separate use of a married woman is a sufficient inventory and compliance with the statute. 5 Fla., 277 ; 8 Fla., 136.

In the case at bar the record was not made until more than eleven months after the execution and delivery of the deed.

The Constitution of 1868, Art. 4, Sec. 26, provides that " all property, both real and personal, of the wife, owned by her before marriage, or acquired afterwards by gift, devise, descent, or purchase, shall be her separate property, and not liable for the debts of her husband."

The act of March 6, 1845, may be construed in harmony with this provision of the Constitution, and is not therefore repealed thereby. It simply declares what shall be done by a married woman in order that her separate property shall not be liable for her husband's debts.

It will be noticed also that all of the rights of the parties before the court vested prior to the adoption of the new Constitution, and cannot be devested by its provisions.

Upon examination, it will appear that the deed to Dorsett and Hackney was never acknowledged by Jas. S. Hackney, or otherwise proved for record, and therefore is not properly of record at all. Mrs. Hackney acknowledges to have relinquished her dower, and not to have conveyed her separate estate.

The defendants, who hold under the conveyance from Mrs. Mary J. Hackney and her husband, claim that they are innocent purchasers for a valuable consideration without notice, and that the property cannot, therefore, be reached in their possession, whatever may have been the frauds in the previous transfer of titles.

It is true that the general principle to be found in the

books is, that courts of equity will always most favorably consider the rights of this class of purchasers, often to the exclusion of valid prior liens.    But the rule does not apply to the case at bar.

The Legislature, by act of March 6, 1845, conferred upon married women within this State the right to hold property separate and independent from their husbands, under certain restrictions, which are carefully and specifically set forth in the law.    Among other restrictions, it is provided by the 6th section of the act referred to that " all the property, real and personal, which shall belong to the wife at the time of her marriage, or which she may acquire in any of the modes hereinbefore mentioned, shall be inventoried and recorded in the circuit court clerk's office of the county in which such property is situated, within six months after such marriage or after said property shall be acquired by her, at the peril of becoming liable for her husband's debts, *as if this act had not been passed ; provided,* that any omission to make said inventory and record shall, in no case, confer any rights upon her husband."    Thomp. Digest, p. 221–2.

The Supreme Court has held, in Mercer vs. Hooker, that " the record of title papers particularly describing the property is a sufficient inventory and compliance with the statute."    5 Fla., 277.

In the case at bar there was no record made of the deed to Mrs. Hackney for eleven months after its execution and delivery, and eight months after it was proved for record. The property, therefore, by the terms of the law, became liable for the husband's debts.

The deed from Thomas to Mrs. Hackney was not recorded when Dorsett and Hackney took their deed, though more than six months had then expired since it was made ; nor was it recorded for two months later, though it was in the power of Dorsett and Hackney to have it done.

No record having been made, as required by the statute,

the property became subject to James S. Hackney's debts, as if the statute had not been passed, and the lien of plaintiffs' judgments attached, and has not since been in any way devested. 5 Fla., 277.

There the property was a horse, which had passed off into the hands of an innocent purchaser, for a valuable consideration, without notice; yet the court held that it was subject to the husband's debts. 5 Fla., 430.

*F. I. Wheaton* for Appellants.

Defendant Mills is in possession of the said real estate by deed for valuable consideration, purchased from defendant Dorsett. Mills claims to hold said real estate as an innocent purchaser for a valuable consideration, without notice of any pre-existing fraud, if any there was, in previous transfers of said real estate.

In support of the position taken, it is now the settled American doctrine, says Chancellor Kent, that a *bona fide* purchaser for a valuable consideration is protected under the statute of the 13th and 27th Elizabeth, as adopted in this country, whether the purchase is from a fraudulent grantor or not, or from a fraudulent grantee, and that there is no difference in this respect between a deed to defraud subsequent creditors and one to defraud subsequent purchasers. 4 Kent's Com., 464, 5th ed.

A defendant may object to a bill of discovery that he is a *bona fide* purchaser of the property, without notice of the plaintiff's claims. Another maxim is, that when there is equal equity, the law must prevail; and this is generally true, for in such a case the defendant has an equal claim to the protection of a court of equity as the plaintiff has to the assistance of the court to assert his title, or, as in this case, to define their judgment liens; and that in such case the court will not interfere on either side. It is on this account that a court of equity constantly refuses to interfere, either for relief or discovery, against a *bona fide* purchaser

of the legal estate for a valuable consideration, without notice, if he choose to avail himself of the defence at the proper time and in the proper mode. 1 Story's Eq., 64.

Another and the last maxim in equity is, that it looks upon that as done which ought to have been done. The true meaning is, that equity will treat the subject matter, as to collateral consequences and incidents, as if the final acts contemplated by the parties had been executed exactly as they ought to have been, not as the parties might have executed them. 1 Story's Eq., Sec. 64–9.

VAN VALKENBURG, J., delivered the opinion of the court.

The complainants seek by their action to subject certain real estate, which they allege was conveyed, first, by James S. Hackney to Green B. Thomas, then by Thomas and wife to Mary J. Hackney, wife of James S., then by Mary J. Hackney and James S. Hackney to James D. Dorsett and Joseph D. Hackney, and then by the said Dorsett and Hackney to William Mills, to sale for the payment of three several judgments against the defendant, James S. Hackney, upon the ground of fraud in the two first mentioned sales and conveyances of the said real estate.

They pray that the court will declare the two first above mentioned deeds of conveyance null and void, and that they may be produced and delivered up to be cancelled.

The defendants, in their separate answers, deny each and every allegation of fraud in the several sales and transfers as charged in the said bill of complaint, James D. Dorsett, Joseph D. Hackney and William Mills claiming that the said real estate is in the possession of the defendant Mills or his vendee; that Mills purchased the same in good faith for a valuable consideration and without notice of any frauds, if any there were, in the previous transfer of said property.

The question which arises is, was the sale of the premises

in question made by James S. Hackney to Green B. Thomas on the 16th day of November, 1865, and the subsequent sale from Green B. Thomas and his wife to Mary J. Hackney on the 9th day of March, 1866, made with intent to "delay, hinder, or defraud creditors," and are the conveyances made at those times therefore "void, frustrate and of none effect ?"

It is charged in the bill of complaint that the indebtedness of the defendant, James S. Hackney, to the complainants respectively, upon which the general judgments set out therein were subsequently recovered, was, at the date of the conveyance of the said real estate by Hackney to Thomas, fully matured and due. That the judgments so recovered are on the records in the County of Orange, where this land was located.

The property was worth the sum of fifteen hundred dollars, which was the consideration expressed in the deeds, but the wife of James S. Hackney did not unite with him in the conveyance to Thomas, or in any manner relinquish her right of dower in the premises.

In his answer to the bill of complaint, the defendant, James S. Hackney, the vendor, says: "He sold the lands in question to Green B. Thomas for the sum of $1,500, which this defendant then regarded as the value of said lands. That the said defendant, Green B. Thomas, paid this respondent for said lands at the date of the conveyance thereof in three promissory notes for the sum of five hundred dollars each, respectively due in one, two and three years, and made payable to this defendant or bearer ; that said Green B. Thomas made payments at divers times upon said notes of several sums of money, amounting in the aggregate to somewhere between two and three hundred dollars."

The defendant, Green B. Thomas, in his answer, states substantially the same facts as averred by James S. Hackney, alleging further that the payments made upon the said notes,

" amounting to several hundred dollars, were made by labor in two trips to Orange county from Ocala, in making shoes in considerable numbers for the said James S. Hackney for sale, and in personal labor of my minor sons for and on account of the said James S. Hackney."

In support of their allegation of fraud, the complainants introduce some evidence. Aden Waterman, Sr., testifies that he had a conversation with James S. Hackney in August, 1865, which was but a short time previous to his conveyance to Thomas. In that conversation Hackney said to the witness : " If I sell this place (meaning Clay Spring) to you now, I shall have nothing left but my other place on the Apopka. I owe two or three thousand dollars in Charleston and other places, and I intend to put the money in my pocket which I shall get for it, and when I sell the other place, as it is all I will have left, and that I do not believe in a man's giving up his last dollar to pay his debts."

Subsequently, and after he, Waterman, had purchased Clay Spring from Hackney, they had another conversation. That then Hackney told him he had sold his place and everything he had to Green B. Thomas. That he, Waterman, had previously sold some cattle to Hackney in part payment for the " Clay Spring ;" that after this last mentioned conversation, " Green B. Thomas came down to where I then lived, and changed the mark and brand of these cattle into the mark and brand of him, the said Green B. Thomas."

There were fifty head of these cattle so received in part payment for " Clay Spring," and they were delivered to Thomas and the son of James S. Hackney, and they two together changed the marks and brands.

The witnesses, Waterman and Johnson, both testify that Green B. Thomas was a poor man, and that he was a shoemaker. Johnson says " he did not have much property." Waterman says " he did not have any visible property ; he was not able to invest $1,500 in a farm." There is no con-

flicting evidence upon this point. The conveyance of the same premises, made by Green B. Thomas and his wife to Mary J. Hackney, the wife of James S. Hackney, on the 9th day of March, 1866, was for the like consideration of fifteen hundred dollars. It does not seem to have been recorded in Orange county until the 16th day of February, 1867, more than eleven months after its date, and about three months subsequent to the rendition of the judgment in favor of the complainant, Stewart, against James S. Hackney, the husband of the grantee.

James S. Hackney answers that the consideration expressed in this deed was paid by Mary J. Hackney, to the best of his recollection, in the following manner: "One horse, valued at one hundred and seventy-five dollars; twenty-two hogs, valued at ten dollars each, and somewhere about sixty dollars in currency of the United States, and the balance of the said consideration in the notes heretofore described as made by Thomas to this defendant or bearer, and of which the said Mary J. Hackney was then the legal and equitable holder."

The defendant, Thomas, answers in this respect, " that he received from Mary J. Hackney, as the purchase money of said lands, to the best of his recollection, one horse, one stock of hogs, and between forty and sixty dollars in the currency of the United States of America. That there was great scarcity of money in circulation in the locality of this transaction. That the residue of his obligations for the original purchase money of this place was then cancelled by the said Mary J. Hackney, who represented herself entitled to do so."

James S. Hackney also claims in his answer that his said wife, Mary J., " became the legal and equitable holder, bearer and sole possessor of the rest and residue of the said promissory notes of Green B. Thomas, by reason of advancements made in currency from her own private funds." These notes were the three given by Thomas to Hackney, payable

in one, two and three years in payment for the premises on the first mentioned sale, and there is in the record no evidence of the purchase of them, or either of them, by Mary J. Hackney ; neither is there evidence that she had at any time after marriage any separate property or private funds, or that she made any advancements to her husband.

The question of whether there was any intent to "delay, hinder, or defraud creditors," under the statutes of this State, raised by the pleadings and the evidence so introduced, has been passed upon by the court below, and the decree entered in this case adjudges the first mentioned conveyance, from James S. Hackney to Green B. Thomas, to be "null and void," "having been made, executed and delivered for a fraudulent purpose to hinder, delay and prevent the collection of the debts of the said James S. Hackney," and the second above mentioned conveyance "to be null and void for any and all purposes whatever, being a continuation of the said fraud committed by the said James S. Hackney."

The evidence seems to warrant these findings. The deed from James S. Hackney to Thomas, without the usual renunciation of dower upon the part of his wife, when Hackney himself agrees that the consideration expressed in the deed was the full value of the property conveyed, taken in connection with the other facts proven in the case, is one strong badge of fraudulent intent.

It is evident that Thomas was in poor circumstances, a man "without any visible property," yet his promissory notes, payable in one, two and three years, without a mortgage upon the property he was so purchasing, or any other security whatever for the payment of these notes as they became due, are received by Hackney in full for the real estate.

The reconveyance of the same premises in a short time thereafter by Thomas and his wife to Mary J. Hackney, the wife of the previous grantor, for the same amount of con-

sideration mentioned in that deed, the return of the three identical notes originally given by Thomas, with the addition of the horse, hogs and small amount of currency, are still stronger evidences of such fraudulent intent.

The notes, horse, hogs and currency used by Mary J. Hackney in the payment for this property must be deemed to have been the property of her husband, there being no proof to the contrary. This doctrine has been heretofore used by this court. Price vs. Sanchez, 8 Fla., 136; Alston vs. Rowles, 13 Fla., 117.

The pleadings and proof show that the defendants, James D. Dorsett and Joseph D. Hackney, took a conveyance of the same premises from Mary J. Hackney on the 14th day of December, 1866; that the consideration expressed in said deed was two thousand dollars; that although signed by James S. Hackney, the husband of Mary J., it was not acknowledged by him in due form of law, and therefore was not properly entitled to be recorded.

It also appears that the said Dorsett and Hackney, through their agent in the purchase of said real estate, had notice of the existence of at least one of the judgments mentioned and set out in complainants' bill of complaint at and before such purchase by them; but the complainants in their bill do not seek to set aside such conveyance, nor does the court below make any decree or order with reference to it.

The defendant, William Mills, purchased of Dorsett and Hackney. It does not, however, appear satisfactorily from the record whether he has a valid conveyance of the premises. Dorsett alleges in his answer, "there was a conveyance to Mills," and Hackney says " he had a deed of conveyance." The bill charges that he had purchased the premises at the time of the commencement of this action. There is no such deed in evidence, and no proof in regard thereto produced or offered. It must be concluded that he was a purchaser previous to the commencement of this action, and it is not shown that he had any knowledge of the

pre-existing frauds or of any liens upon the said real estate by reason of the indebtedness of James S. Hackney to any of these complainants.

The complainants do not seek by their bill any relief from the conveyance to him, if one exists, and the court has adjudged none in its decree. They simply charge him with a knowledge of the previous frauds, but the evidence to support the charge is not satisfactory.

The decree directs the sheriff of Orange county to proceed without delay to levy upon and sell the lands described in said deeds from James S. Hackney to Green B. Thomas, and from Green B. Thomas to Mary J. Hackney, to satisfy the judgments and executions entered up and issued in favor of the complainants, and to execute and deliver a good and sufficient deed for said lands to the purchaser, "conveying all the right, title and interest or claim of the said James S. Hackney, Green B. Thomas, James D. Dorsett, Joseph D. Hackney and William Mills, in or to the said lands to the purchaser or purchasers thereof."

It is difficult to see upon what grounds appearing in the decree the "interests of James D. Dorsett, Joseph D. Hackney and William Mills" are to be conveyed to the purchaser at the sheriff's sale. Their conveyances are not asked to be set aside, and the decree is entirely silent in regard to them. It is only the two first deeds that are declared null and void. The question as to whether Dorsett and Hackney and William Mills are parties privy to the fraud, is not adjudicated. There is no judgment against them or either of them.

The decree must be modified by striking out of it so much as directs the sheriff of Orange county to convey the right, title, interest or claim of James D. Dorsett, Joseph D. D. Hackney and William Mills in or to said land to the purchaser or purchasers thereof.

It must also be further modified so far as it directs the sheriff to put the purchaser in possession of the premises,

and to turn all others out of possession. The decree directs a sale by the sheriff upon executions issued upon the judgments named, and the purchaser must take such title as he may acquire by virtue of such a sale. In such case the court should not direct a·delivery of the possession under the sheriff's deed.

The decree of the Circuit Court is affirmed, except so far as it should be modified in accordance with .this opinion, and the cause is remanded with directions that the decree. be so modified and for such further or other proceedings as may be conformable to law and equity.

If, however, the plaintiffs desire to open the decree, and by proper pleadings put in issue the validity of the conveyance from Mary J. Hackney to James D. Dorsett and Joseph D. Hackney, and the subsequent one from them to William Mills, the court below will permit them so to do.