JOHN BIGELOW, *et ux.*, JOHN BIGELOW, as Administrator of the Estate of Margaret A. Hill, Deceased, JOHN T. HILL and HELEN BIGELOW MALCOLM, a Widow, v. DUDLEY C. DUNPHE as Executor of the Last Will and Testament of Margaret C. Dunphe, Deceased.

197 So. 328
Division A
Opinion Filed July 2, 1940

604

J. C. *Cain* and *Archie Clements,* for Appellants;

D. G. *Haley* and *Harrison E. Barringer,* for Appellee.

THOMAS, J.—According to the briefs, the point to be borne in mind, as we examine the facts and the applicable principles of law, is the validity of a mortgage executed by a free dealer, without her husband joining, encumbering property standing in her name and occupied by the woman, her husband and her children. In stating the question appellants refer to the mortgagor as the head of the family and to the property as a homestead while appellee gives her

no such designation and describes the land as "separate property * * * used at the time as the home."

To answer the respective parties we must determine first, who was the family head and, second, the status of the property.

The bill sought foreclosure of the mortgage executed by the wife, a free dealer, to the assignor of plaintiff's testatrix. There are no unusual features in the instrument nor is there any dispute about the amounts, if any, collectable under it.

Relevant to the answer it was developed by the witnesses that the husband and wife lived together for thirty-five years until the union was broken by the death of the latter in 1937. In 1910 the husband suffered a severe illness and was thereafter incapacitated, mentally and physically, so that he became the supportee of his wife rather than her supporter. He performed no appreciable amount of work, had no income and had no children who contributed to his livelihood. His spouse provided for the family from an orange grove inherited from a former husband.

The occupancy of the property as a home commenced in 1925, the year that it was deeded to the wife. She is depicted as the one who conducted all phases of the family's affairs and who supervised the grove from which the exchequer was replenished and maintained. She owned the house where she and her unfortunate husband and her children found shelter and her capacity for about twenty-five years was unquestionably that of family head. We feel no hesitancy in saying that the property in question was possessed of all of the characteristics of a homestead as contemplated under the organic law, and that the facts may be interpreted as reflecting a typical case of a wife through extremity becoming the actual head of the family. See

Jones v. Federal Farm Mortgage Corp., 138 Fla. 65, 188 South. Rep. 804.

The reasons given by the chancellor for his decision hardly correspond with the elements of the questions as they have been framed for our answer for he held that the mortgage should be foreclosed because of the failure to disclose to the mortgagee the circumstances establishing the status of the woman and the property and rebutting the presumption that the husband was the head of the family rather than the absence of such facts. His view was that "It should have been made to appear at or before the execution of the mortgage * * *" that the headship was not in the husband.

Thus we, having reached the decision that the wife actually held the position and that the property was in truth a homestead, go a step farther and pass on the matter suggested by the chancellor's observations.

The condition of the title and the authority of the married woman to act as a free dealer could have been learned from public records kept for the purpose but the use of the property at the time and the peculiar conditions of the family living upon it were, of course, not ascertainable there.

The question arises, then, whether the lender could accept the mortgage without investigation of the use because of an obligation on the part of the borrower to advise him of the homestead character of the property or he was charged with inquiring as to the nature of the possession at the time of the encumbrance.

It is written in Thompson on Real Property that the purchaser of property is put upon inquiry as to the title or interest of one in possession (Vol. 5, Sec. 4244) and in dealing with possession as notice of homestead rights in the same work (Sec. 4253, text p. 341) the quotation from

Texas Land & Loan Co. v. Blalock, 76 Tex. 85, 13 S. W. Rep. 12, 13, was given:

" 'The fact of actual possession and use as the home of the family was one against which the lender could not shut his eyes. Every person dealing with land must take notice of an actual, open, and exclusive possession; and where this, concurring with interest in the possessor, makes it a homestead, the lender stands charged with notice of that fact, it matters not what declarations to the contrary the borrower may make.' "

We are aware of the differences in phraseology of the Florida and Texas constitutions but think that the principle is not affected by it. In 13 R. C. L. at page 588, we find the statement: "In a majority of the States occupancy of a place by a family is presumptive evidence of its appropriation as a homestead, and is notice to all the world of that fact * * *."

Homestead character is a matter of use which could be determinable only from the physical appearance as distinguished from the title as it is shown on the records. This can, of course, change from time to time without any reflection whatever in the record so that a mortgagee on notice, as he is, of the constitutional inhibition accepts a mortgage with notice also of the use of it as a homestead and the burden is not upon the mortgagor to acquaint the mortgagee with the facts showing the homestead character of the property attempted to be encumbered. See Lynn v. Sentel, 183 Ill. 382, 55 N. E. Rep. 838, 75 Am. St. Rep. 110; Cropper v. Goodrich, 89 Kan. 589, 132 Pac. Rep. 163; 29 C. J. 919.

The Constitution, Article X, provides that: "A homestead * * * owned by the head of a family residing in this State * * * shall not be alienable without the joint consent of husband and wife, when that relation exists."

The following exposition of the real purpose for the

protection of the homestead is selected from 26 American Jurisprudence, page 10:

"Homestead laws are founded upon considerations of public policy, their purpose being to promote the stability and welfare of the State by encouraging property ownership and independence on the part of the citizen, and by preserving a home where the family may be sheltered and live beyond the reach of economic misfortune. The statutes are intended to secure to the householder a home for himself and family, regardless of his financial condition—whether solvent or insolvent—without reference to the number of his creditors, and without any special regard to the extent of the estate or title by which the homestead property may be owned. The laws are not based upon the principles of equity; nor do they in any way yield thereto; their purpose is to secure the home to the family even at the sacrifice of just demands, the preservation of the home being deemed of paramount importance."

When a study is made of the underlying purpose for the protection of the home vouchsafed in the Constitution the position of the appellee here that he accepted a mortgage executed by a free dealer and presumed that her husband was the head of the family, hence was unaware of the fact that the property was possessed and used as the home, loses its strength.

Thus the organic law is given the full force to which it is entitled.

The authority given the married woman to become a free dealer is founded upon statute and by it she may trade as a *feme sole* but one who deals with her may not indulge the presumption that because she executed a mortgage alone on property owned by her she is not the head of her family and the property is not a homestead. If, as in this case, it develops that the land though hers is in fact

of this character and she has become the family head, then the mortgagee is left with an invalid instrument which could have been avoided by investigation on his part.

We decide that the final decree should be—

Reversed.

So ordered.

TERRELL, C. J., and BUFORD, J., concur.

CHAPMAN, J., concurs in opinion and judgment.

JUSTICES WHITFIELD and BROWN not participating as authorized by Section 4687, Compiled General Laws of 1927, and Rule 21-A of the Rules of this Court.