## BEALL et al. v. PINCKNEY.

### No. 11296.

Circuit Court of Appeals, Fifth Circuit.

July 6, 1945.

---

James N. Daniel, of Chipley, Fla., for appellants.

Leo. L. Foster, of Tallahassee, Fla., for appellee.

Before SIBLEY, HUTCHESON, and LEE, Circuit Judges.

SIBLEY, Circuit Judge.

The Bank of Malone failed and Federal Deposit Insurance Corporation was appointed its receiver on April 7, 1942. On April 24th the receiver instituted bankruptcy proceedings against L. H. Beall and he was adjudicated a bankrupt on July 21st, and T. F. Pinckney was elected and qualified as trustee in bankruptcy on August 22nd. On September 24, 1944, the trustee brought a plenary suit in the district court against the bankrupt Beall and his wife Marietta "Tot" Beall praying that the trustee "be adjudged the equitable owner" of a house and lot in Marianna, Florida, the legal title to which was in Mrs. Beall, and that all title be divested out of the Bealls and given to him. On a motion for summary judgment it was held there was no genuine issue as to any material fact, and a decree was entered as prayed. The defendants have appealed.

On the motion for summary judgment only the pleadings were considered. The allegations of the petition were admitted by the answer, to the effect that prior to December 1, 1941, L. H. Beall had misappropriated about $119,000 of the funds of the Bank and owed it that amount; and on that date he paid to H. C. Smith, Sr., his check, bearing on its face a notation that it was the purchase price of the house and lot in controversy; and that in consideration of the check Smith, and other members of his family, made a clear title to Mrs. Beall, the wife of L. H. Beall, she paying nothing herself. Later, about March 15, 1942, Beall, who dealt in gas fixtures and equipment, transferred to Mrs. Beall $500 worth of such fixtures, she paying nothing therefor. The general allegation that this was all done "to avoid creditors," and "for the purposes of defrauding his (Beall's) creditors and hindering and delaying the collection of the indebtedness due the Bank" was denied by the answer, which, as amended, averred that the money against which the check to Smith was drawn was a special account raised by borrowing $5,000 from another bank which was later repaid by funds distributed to Beall from his father's estate; that Beall was on December 1, 1941, and for many years before had been, the head of a family residing in Florida which consisted of his wife and son then twelve years old, and was entitled under the Constitution of Florida to a homestead; that the property purchased was of the sort named in the Constitution and laws of Florida relating to homesteads and was purchased for a home for the family, which moved into the house as soon as it was readied for occupancy about February 1, 1942, and he and his wife and son have ever since lived there, except that Beall has since October 6, 1943, been in a federal prison; the gas fixtures were added as an improvement of the home about February 15, 1942; if the deed had been made to Beall his creditors could have had no right or claim against the property as his homestead, and the taking of the title in the name of Mrs. Beall was not a fraud on any creditor and does not in law hinder or delay any of his creditors in the collection

of their debts; and if said property be Beall's it is his homestead. The decree recites the substance of these alleged facts and holds that there is no genuine issue of material fact, and that only a decree for plaintiff is possible. The decree does not mean that apparent issues are not genuine because not sustained by any evidence, but rather that the facts denied by the answer and the additional facts therein alleged are not material.

■ The suit is brought by the trustee in bankruptcy in the district court by reason of the jurisdiction, concurrent with that of the State court, established by the Bankruptcy Act, 11 U.S.C.A. § 110, sub. e(3). But the right to be tried is one which is to be tested by State law, as provided by Sect. 110, sub. e(1): "A transfer made or suffered or obligation incurred by a debtor adjudged a bankrupt under this title which under any Federal or State law applicable thereto, is fraudulent as against or voidable for any other reason by any creditor of the debtor, having a claim provable under this title, shall be null and void as against the trustee of such debtor." No federal law is applicable to the transactions, but only the State law applying to transactions fraudulent and void as to creditors, and the receiver of the Bank of Malone is the only creditor mentioned. The sole invalidity alleged is that Beall had the transfers "made for the purposes of defrauding his creditors and hindering and delaying the collection of indebtedness due the Federal Deposit Insurance Corporation." The precise question therefore is: Could this creditor under Florida law avoid these transfers on this ground?

■ We preliminarily emphasize two other matters. First, it is to be remembered that the trustee is not asserting an equitable title in himself because any of the misappropriated money of the Bank is traceable into this property. The money used to buy the home was free of any charge or equity, the undoubted money of Beall. Second, the argument by appellee that under the bankruptcy law Beall's homestead can in no event be enjoyed because he did not claim the exemption in his schedule, and because having transferred it to his wife in fraud of creditors it cannot be exempted under 11 U.S.C.A. § 24, is premature. Whether Beall has transferred his property in fraud of creditors is the thing to be tried in this case. Whether he is too late to claim an exemption in

bankruptcy can only arise in the bankruptcy proceedings. In this plenary suit the only question is whether the transfers to Mrs. Beall were or were not made for the purpose of delaying or defrauding creditors and specifically the debt due the Bank.

■ The statute of Florida touching transfers in fraud of creditors is an adoption on Jan. 28, 1823, of the old English Statute of Elizabeth and is now found in Florida Statutes, Ann. § 726.01. From its verbosity these applicable words are taken: "Every * * * transfer and assignment * * * by writing or otherwise * * * made or executed, contrived or devised of fraud, covin, collusion or guile, to the end, purpose or intent to delay, hinder or defraud creditors or others of their just and lawful actions, suits, debts * * * shall be from henceforth as against the person or persons * * * so intended to be delayed, hindered or defrauded, deemed, held, adjudged and taken to be utterly void, frustrate and of none effect * * *." The Florida Supreme Court declares that there must be a creditor to be defrauded, a debtor intending fraud, and a conveyance of property applicable by law to the payment of the debt. Bay View Estates Corporation v. Southerland, 114 Fla. 635, 154 So. 894, 900. But there are circumstances and situations which have been called "badges of fraud," and for a debtor to transfer his property without consideration to his wife, to the detriment of his creditors, is generally such. What happened here is that Beall, having borrowed $5,000 for this special purpose, did not transfer the money to his wife, but bought this house, becoming immediately on paying the price, the equitable owner of it; but instead of taking title to himself he had it made to his wife. What he thus transferred was his equitable right in the property. Were these the only facts, a case of transfer in fraud of existing creditors would be prima facie made out, and a creditor could in equity trace his debtor's money into the purchase and subject the property to his debt. Alston v. Rowles, 13 Fla. 117, 118; Roper v. Hackney, 15 Fla. 323; Florida Loan and Trust Co. v. Crabb, 45 Fla. 306, 33 So. 523; First State Bank v. Fitch, 105 Fla. 435, 141 So. 299, 301.

■ But none of these cases, cited by appellee, has to do with the homestead right, or with a transaction entered into

with the purpose and with the actual result of establishing a family home. The statute of Elizabeth, the progenitor of the law as to hindering and defrauding creditors, belongs to the age that gave the creditor the Shakespearean "pound of flesh". The policy of the law then was to strip the debtor naked, and afterwards imprison him for the remaining debt. Such imprisonment has been universally abolished. Bankruptcy statutes are no longer used primarily to punish an insolvent, but more often to release and rehabilitate him. In the United States public policy has looked beyond the debtor to his family, when he has one, and has regarded the reasonable protection of the family as of greater concern than the full payment of debts. The resulting homestead laws are peculiarly American. 26 Am.Jur., Homestead, Sect. 3. In Florida the exemption of the homestead began with the Constitution of 1868. It was continued and improved in the Constitution of 1885. The present self-executing provision is quoted in the margin.* Under it, the homestead, whether rural or urban, as there defined, owned by the head of a family residing in the State is exempt from all process for debts, unless of the named classes which do not include the debt here involved. And this exemption survives the debtor and inures to his widow and heirs. Hill v. First Nat. Bank, 73 Fla. 1092, 1093, 75 So. 614; Raulerson v. Peeples, 77 Fla. 207, 81 So. 271. The exemption is absolute and permanent unless abandoned. Created by the Constitution itself, in any conflict with older legislation favoring creditors it must be held superior to the statutory rights of creditors as to debts made since the Constitution. We find nothing to the contrary in the decisions of the Florida court. The high purpose of the homestead was stated very recently in Collins v. Collins, 150 Fla. 374, 7 So.2d 443. While the Constitution speaks of the homestead as "owned by the head of a family," the expression is not to be taken too strictly, and in Murphy v. Farquhar, 39 Fla. 350, 22 So. 681, it was held that the husband's deed of it to his wife did not defeat it. In Hill v. First National Bank, 73 Fla. 1093, 75 So. 614, the head of a family was allowed to found her claim on a possession retained by consent of her grantee. It is generally held that an equitable interest is enough to support the homestead claim. 26 Am.Jur., Homestead, Sect. 58. In a case where creditors' rights were asserted under the fraudulent transfer statute the Florida court said that as to the exempt property there were no creditors, for they had no rights in reference to it; Rigby v. Middlebrooks, 102 Fla. 148, 135 So. 563, where a bill like this was dismissed.

We do not, however, find in Florida a case where, as here, the debtor took his own money and bought a home for his family, and had title taken in his wife's name for that purpose, and afterwards occupied it as a homestead. In other jurisdictions there seems to be a divergence as to whether he can claim it as his homestead. 26 Am.Jur., Homesteads, § 65, Notes 8 & 9; Bremseth v. Olson, 16 N.D. 242, 112 N.W. 1056, 13 L.R.A.,N.S., 170, 14 Ann.Cas. 1158. A like diversity is set forth in 40 C.J.S., Homesteads, § 81. The view has been strongly stated that if the debtor be entitled to a homestead he wrongs his creditors in no way by originally taking title to the property in his wife's name instead of his own and they cannot assert that the transaction is in

---

* Sections 1 and 2 of Article X of the Constitution of Florida.

"Section 1:—A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars worth of personal property, and the improvements on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. But no property shall be exempt from sale for taxes or assessments, or for the payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house, field or other labor performed on the same. The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner; and no judgment or decree or execution shall be a lien upon exempted property except as provided in this article.

"Section 2:—The exemptions provided for in section one shall inure to the widow and heirs of the party entitled to such exemption, and shall apply to all debts, except as specified in said section."

fraud of them. Cipperly v. Rhodes, 53 Ill. 346; Peake v. Cameron, 102 Mo. 568, 15 S.W. 70; Kennedy v. First National Bank, 107 Ala. 170, and on rehearing page 179, 18 So. 396, 36 L.R.A. 308, where many cases are collected; Reeves v. Peterman, 109 Ala. 366, 19 So. 512; Kelley v. Connell, 110 Ala. 543, 18 So. 9. That the homestead thus arising prevails over the creditor's right to avoid the transaction was held in Backer v. Meyer, 8 Cir., 43 F. 702. See also Green v. Root, D.C., 62 F. 191, at page 201; Orr v. Shraft, 22 Mich. 260; Monroe v. May, Weil & Co., 9 Kan. 466, 476; Belden v. Younger, 76 Iowa 567, 41 N.W. 317.

 In view of the liberal construction generally given to the homestead laws we incline to hold that a home corresponding to that described in the Florida Constitution, purchased by the head of the family with his free funds for a homestead and actually occupied by him and the family before any actual or constructive seizure to pay his debts, is his homestead, though he may have had title conveyed to his wife. If so making the conveyance be under the law a defeat of this intention on the part of himself and his wife, a court of equity might even reform the conveyance which by mistake of law does not accomplish but defeats the intention of the parties. But even though a perfect homestead did not result, the intention to do what the Constitution not only permits but provides, is not an intention to hinder and defraud creditors within the meaning of the Florida statute on that subject. Nothing has been taken from them to which they were entitled. The family of an imprisoned father has been secured a home by the use of funds inherited from his father, and this is neither morally nor legally wrong, according to the Florida Constitution. In Kettleschlager v. Ferrick, 12 S.D. 455, 81 N.W. 889, 76 Am.St.Rep. 623, a deed from a husband to his wife conveying his homestead was adjudged void as to creditors, but only because it was made pursuant to a plan to abandon that homestead and acquire another, which was done, and for the purpose of sheltering under her name what could no longer be protected as a homestead. No such case appears from these pleadings.

 We think therefore that the issues of fact offered by the answer are material and the truth of the allegations ought to be tried, to the intent that it may be found whether there was a fraudulent purpose to hinder this creditor, or a good faith intention to provide a homestead for the family. We express no opinion about the transfer of the gas fixtures because we have had no special argument or briefs on the question of improvements added to a homestead in Florida, if this be one.

The decree as a summary judgment is reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed.