**William Joseph MANDA, Bankrupt, Appellant,**

**v.**

**Don C. SINCLAIR, Trustee, Appellee.**

**No. 17907.**

United States Court of Appeals
Fifth Circuit.

May 23, 1960.

Rehearing Denied July 8, 1960.

Charles H. Warwick, Jr., West Palm Beach, Fla., for appellant.

Robert M. Sturrup, Dean, Adams, Fischer & Gautier, Miami, Fla., for appellee.

Before CAMERON, BROWN and WISDOM, Circuit Judges.

JOHN R. BROWN, Circuit Judge.

We here deal with appeals from two orders in bankruptcy. In both the Bankrupt, not the Trustee or a Creditor, is the sole appellant. We dismiss one and sustain the other.

The first relates to a chattel mortgage given to the Bank of Palm Beach and Trust Company as security for $750 then advanced by the Bank and paid over to the Bankrupt's attorney who was also an officer of the lending Bank. The entire transaction took place the day before the filing of the petition for bankruptcy. The trustee filed a petition to have the chattel mortgage declared void

as to the Trustee. Among other grounds, the Trustee urged that it was void as not timely recorded under Florida Statutes §§ 698.01, 319.27(2), F.S.A. Further, while the 21-day grace period under § 60, sub. a (7) I(B), 11 U.S.C.A. § 96, sub. a(7) I(B) (1959 Supp.), might apply to transactions within § 60, it was not relevant to the Trustee's rights under § 70, sub. c, 11 U.S.C.A. § 110, sub. c.

The Referee denied this relief on the ground that the Bankrupt had received value so that the estate was not diminished. On the Trustee's petition for review, the District Court reversed this action of the Referee and held that the chattel mortgage to the Bank was invalid as to the Trustee.

■ But the Bank did not appeal. It was the Bankrupt who alone appealed. The right of appeal within 30 days is, of course, extended "to the aggrieved party," 11 U.S.C.A. § 48. Under the rules of this Court[1] and General Order in Bankruptcy 36,[2] the Federal Rules of Civil Procedure apply unless otherwise prescribed. This brings into play F.R. Civ.P. 73(b), 28 U.S.C.A., which provides that "The notice of appeal shall specify the parties taking the appeal." The notice of appeal here names the Bankrupt only. It does not undertake to name the Bank, nor does it prosecute the appeal for the Bank.

■ It was the Bank whose rights were directly and adversely affected. The Bankrupt, while unhappy, was not aggrieved. In re Michigan-Ohio Bldg. Corp., 7 Cir., 1941, 117 F.2d 191. If the chattel mortgage was valid, the Bank alone had the security and the equity, if any, was an asset of the Bankrupt subject to administration. If the mortgage was invalid, what the Bank lost, did not become property in which the Bankrupt would, apart from the estate, have any interest.

The suggestion is made, and not seriously disputed, that the Bankrupt from funds not identified has since paid off the Bank. From that, it is urged that since the Bank has been paid, the Bankrupt will be hurt if he cannot step into the shoes of his secured Creditor (Bank) either to get the property or avoid the possibility of the Bank having to restore the amounts so received. But this pain to the Bankrupt does not flow from the order. It stems from the extra-legal conduct of the Bankrupt. If the Bank has to disgorge—and that is not before us, nor has any such order yet been entered so far as we are informed—it is the Bank that hurts. It alone has the appeal.

Consequently, for want of an aggrieved party, the appeal as to the chattel mortgage is dismissed without ever reaching the merits.

■ The second appeal relates to the exemption claimed by the Bankrupt as to 7 acres of land in the Town of Haverhill under the homestead provisions of § 1, Art. X of the Florida Constitution, F.S.A.[3]

1. See Rule 11, Rules of the United States Court of Appeals, Fifth Circuit, 28 U.S.C.A.:
"1. Appeals in proceedings in bankruptcy and in controversies arising in proceedings in bankruptcy taken under Sections 24 and 25 of the Bankruptcy Act as amended June 22, 1938, * * * in respects not provided for in said Sections or by the General Orders in Bankruptcy, shall be governed by the rules for appeals in civil actions."

2. Order 36, General Orders in Bankruptcy (11 U.S.C.A. following section 53), provides:

"Appeals shall be regulated, except as otherwise provided in the Act, by the rules governing appeals in civil actions in the courts of the United States, including the Rules of Civil Procedure for the District Courts of the United States."

3. "§ 1. Exemption of homestead; extent.—
"A homestead to the extent of one hundred and sixty acres of land, or the half of one acre within the limits of any incorporated city or town, owned by the head of a family residing in this State, together with one thousand dollars worth of personal property, and the improve-

The Trustee did not dispute either the status of the Bankrupt as the "head of a family," or the occupancy of the premises by the family with the Bankrupt as its head from which the status of a homestead would arise. Cf. In re Noble's Estate, Fla.1954, 73 So.2d 873; Bigelow v. Dunphe, 1940, 143 Fla. 603, 197 So. 328, 330. On the contrary the Trustee concedes, and the Referee and the District Court agree, that Bankrupt was entitled to a homestead exemption. The dispute concerns only the *size* of the property exempt. This arises because the property is within the corporate limits of Haverhill as to which the Constitution, note 3, supra, confines the exemption to "the half of one acre within the limits of any incorporated city or town." Fla.Const., Art. X, § 1. This in turn brings into question the geographical extent of Bankrupt's homestead as of the date of incorporation of Haverhill since § 5 (Art. X) of the Constitution provides that no § 1 homestead "shall be reduced in area on account of its being subsequently included within the limits of an incorporated city or town * * *." Morgan v. Bailey, 1925, 90 Fla. 47, 105 So. 143; Croker v. Croker, D.C.Fla., 7 F.2d 218, 219.

The land, when purchased in 1941, comprised 15 acres. Title was taken in the name of W. J. Manda, Inc., a Florida corporation wholly owned by Bankrupt. The land was not then occupied. But in 1945 Bankrupt sold his former home and with his wife and family moved onto the property here involved. They continued to make this their actual home. From the date of acquisition down through May 3, 1950, the land was not in an incorporated area. On that date,

the Town of Haverhill was incorporated. But while Haverhill was being consolidated through incorporation, the Manda household was breaking up. Bankrupt and his wife were divorced a few months later on September 27, 1950. Pursuant to the property settlement approved in the divorce decree, 7 acres were conveyed to Mrs. Manda, the former wife, by warranty deed executed by the corporation and Bankrupt individually. Thereafter Bankrupt, as head of a family, continued to occupy the remaining 8 acres as a homestead. During all of this time he claimed, and was allowed, the homestead *tax* exemption secured under § 7 (Art. X) of the Florida Constitution.

In the meantime, perhaps with the stillness of night and with no indication here that what was happening was known to Bankrupt, the corporation was automatically dissolved on May 15, 1953, for nonpayment of state taxes.[4] On dissolution the directors are statutory trustees holding title for the benefit of stockholders—here the Bankrupt alone.

On this the Trustee argued—so far successfully—that while dissolution of the corporation in May 1953 vested Bankrupt with sufficient ownership to give him personally a homestead exemption, this did not come into being until after the municipal incorporation (1950). Consequently, the homestead would be limited to one-half an acre.

If this § 1, Florida constitutional homestead exemption rested on *title*, this would be correct. But Florida courts have approached this constitutional guarantee in quite a different way. It is not concerned with title nor with relative equities. It is a policy to protect the

ments on the real estate, shall be exempt from forced sale under process of any court, and the real estate shall not be alienable without the joint consent of husband and wife, when that relation exists. But *no property shall be exempt* from sale for taxes or assessments, or for the payment of obligations contracted for the purchase of said property, or for the erection or repair of improvements on the real estate exempted, or for house,

field or other labor performed on the same. The exemption herein provided for in a city or town shall not extend to more improvements or buildings than the residence and business house of the owner; and no judgment or decree or execution shall be a lien upon exempted property except as provided in this Article." Fla. Const., Art. X, § 1.

4. Under Florida Statute, this was done by proclamation of the Governor.

family and the survivors of a family against economic misfortune. Preservation of the home, even to the detriment of faultless creditors, is the great aim. About this constitutional provision, this Court pointed out the contrast between what it there described as the Shakespearean "pound of flesh" approach "to strip the debtor naked" and the policy of the Florida Constitution. "In the United States public policy has looked beyond the debtor to his family, when he has one, and has regarded the reasonable protection of the family as of greater concern than the full payment of debts. The resulting homestead laws are peculiarly American." Beall v. Pinckney, 5 Cir., 1945, 150 F.2d 467, at page 470, 161 A.L.R. 1281. And a brief consideration of a few of the Florida cases demonstrates the foundation for our statement that "while the Constitution speaks of the homestead as 'owned by the head of a family,' the expression is not to be taken too strictly * * *." Beall v. Pinckney, 150 F.2d 467, 470. Pasco v. Harley, 1917, 73 Fla. 819, 75 So. 30, recognizes that the head of a family occupying the premises has an exemption "to the extent [of] any right, title, or interest." 75 So. 30, at page 33. The term "interest" does not mean title and it "denotes a beneficial property right in the land." 75 So. 30, at page 34. Following this liberal approach, there "may be homestead exemptions in the equity of redemption in mortgage property." 75 So. 30, at page 34. There, as in Hill v. First National Bank, 1917, 73 Fla. 1092, 75 So. 614, at page 616, the Court pointed out that the "exemptions 'from forced sale * * *' of certain homestead property 'owned by the head of a family * * *' have reference to the beneficial interests as owned by the head of a family * * *." In Hill the question arose whether a deed given by a mother to her son was, as she asserted and the son agreed, intended to operate only as a will. On the assumption that it was a deed absolute with the grantee acquiescing in her continued possession during her lifetime, the Court held this

sufficient ownership. "But, even if she merely retained possession of the land, it is of sufficient value to her to have it protected under the homestead law, and it is of no concern whatever to the creditor that another has the superior title." 75 So. 614, at page 617. In Menendez v. Rodriguez, 106 Fla. 214, 221, 143 So. 223, 226 (concurring opinion), it was pointed out that the homestead exemption attaches to "any estate in land owned by the head of a family * * * whether it is a freehold or less estate * * *." In Bigelow v. Dunphe, 1940, 143 Fla. 603, 197 So. 328, at page 330, the Court quotes with approval 26 Am. Jur. § 6 at 10 (Homestead) concerning the beneficent policy of such exemptions. "The statutes are intended to secure to the householder a home for himself and family, regardless of his financial condition * * *, and *without any special regard to the extent of the estate or title by which the homestead property may be owned.* * * *" (emphasis supplied). All of this was re-emphasized in Bessemer Properties, Inc. v. Gamble, 1946, 158 Fla. 38, 27 So.2d 832, 833. This homestead exemption "should be liberally construed in the interest of the home, and * * * a homestead exemption extends to any right or interest the head of a family may hold in land * * *. It [is] not essential that he hold the legal title to the land. This court has also held that a one-half interest, the right of possession, or any beneficial interest in land gave the claimant a right to exempt it as his homestead. * * * If the homestead status attached prior to proceedings to subject the property to creditor's lien, regardless of where the title is lodged, it is exempt. * * * [citing cases] Beall v. Pinckney, 5 Cir., 150 F.2d 467." 27 So.2d 832, at page 833.

Judge Waller, himself long experienced in Florida law, made a significant statement for this Court in Doing v. Riley, 5. Cir., 1949, 176 F.2d 449, at page 456. After discussing Bessemer Products, Inc. v. Gamble, supra, and Nelson v. Franklin, 152 Fla. 694, 12 So. 771, Judge Waller pointed out the distinction between the

"interest" which would give to the head of a household the right to claim a defensive exemption, on the one hand, and, on the other, an acquisition of some character of title. Bessemer v. Gamble, supra, "did not hold that he thereby achieved a muniment of title to the entire estate but merely that he had an equitable interest that was sufficient, as a matter of defense, against the execution." [176 F.2d 456]

In the light of this Florida approach, the record here is compelling that Bankrupt is entitled to an exemption of the 8 acres remaining after the conveyance to his former wife. The facts are overwhelming that this property was occupied by Bankrupt both at the time of the municipal incorporation (May 1950) and at the time of the dissolution of his wholly owned corporation (May 1953). This was his home and where he presided as the head of a family. Every action showed it to be a homestead. Within but a few months after the municipal incorporation the Manda divorce occurred. While losing his wife, Bankrupt was not being divorced from the corporation. Nevertheless, in the dissolution of marriage, the wife received not one-half of the stock, but one-half of the real estate. And she got that by a deed signed by Bankrupt personally. In the interim the Bankrupt claimed and received the tax exemption as a homestead. We recognize that there are substantial differences between the tax exemption of § 7, Art. X and the § 1 exemption from enforced sale. See Doing v. Riley, 5 Cir., 176 F.2d 449, 455; Miller v. West Palm Beach Atlantic National Bank, 1940, 142 Fla. 22, 194 So. 230; Nelson v. Franklin, 1943, 152 Fla. 694, 12 So.2d 771; Shambow v. Shambow, 1943, 153 Fla. 760, 15 So.2d 836. But this circumstance was relevant in determining the status of Bankrupt as head of a family, his residence on the property and its use as an actual homestead. The Bankrupt by the long continued sufferance of the corporation had a clear right of possession. That alone was adequate. Hill v. First National Bank, supra, 73 Fla. 1092, 75 So. 614, 617.

He had a beneficial right in the property and that is all Florida requires. It is immaterial that under accepted Florida corporation principles, this would not be a legal title or might not be catalogued as an "equitable" interest or title. The Trustee makes the mistake of thinking that recognition of a homestead exemption in the full tract as of the date of municipal incorporation is the equivalent of disregarding the corporate fiction contrary to Florida law.[5] If we must analogize, it is not a case of piercing the corporate veil to vest in the Bankrupt a title. Rather, the theory is that the corporation holds title, legal or equitable or both, for the Bankrupt just as did the wife in whom the husband put the title in Bessemer Properties, Inc. v. Gamble, supra; Coleman v. Williams, 1941, 146 Fla. 45, 200 So. 207; and Beall v. Pinckney, supra.

The homestead exemption was not, therefore, confined to the one-half acre as city property. It covered the full tract owned by Bankrupt on the date of bankruptcy. The order of the District Court must therefore be reversed and the cause remanded for further consistent proceedings.

Appeal dismissed in part, reversed and remanded in part.

---

5. The Trustee cites Brown v. Florida Southern Railway Co., 1892, 19 Fla. 472; Howell Turpentine Co. v. Commissioner, 5 Cir., 162 F.2d 319. He likewise refers to opinions of the Florida Attorney General No. 056–110; No. 047–60 relating to tax exemption under § 7, Art. X.