INEZ MENENDEZ and JOSE MENENDEZ, her husband; AMERICAN ALVAREZ and SATURNINO ALVAREZ, her husband; CONCHA ALONZO and MANUEL ALONZO, her husband; MERCEDES REYES, a widow, *Appellants*, vs. ROSA RODRIGUEZ, a widow, *Appellee*.

143 So. 223.

En Banc.

Opinion filed July 18, 1932.

*Sutton, Tillman & Reeves,* and *R. G. Tittsworth,* for Appellants;

*Caraballo, Graham & Cosio,* for Appellee.

BUFORD, C.J.—This appeal is from a decree of partition. The salient facts appear to be that Manuel Rodriguez on the 26th day of September, 1917, acquired a certain lot of land; on the 17th day of March, 1919, he deeded this property to Alfredo Pendas and on the same day Alfredo Pendas deeded it to Rosa Rodriguez, wife of Manuel Rodriguez; that she held the property under this deed until the 30th day of·May, 1923, a little more than four years, when she deeded the property to one Manuel Valle and on the same day Manuel Valle deeded the property to Manuel Rodriguez and his wife Rosa Rodriguez. The conveyances referred to were joined in by the respective husbands and wives, as the case may be, of the grantors. The property conveyed by these deeds was lots 8 and 9 of block 54 of the revised map of Macfarlane's addition to West Tampa as per map thereof recorded in plat book 1, page 65, Records of Hillsborough County, Florida.

These lots were vacant and unimproved so far as the record shows until after the last conveyance above referred to was made. Shortly after the conveyance of the land from Valle and wife to Rodriguez and wife, which deed passed to the grantees an estate by the entireties, the grantees built a dwelling upon these lots and thereafter occupied the same as a home. While the same was occupied as a home by Rodriguez and his wife, Manuel Rodriguez died. He left surviving him children by a former marriage, who are the appellants in this case, and the widow, Rosa.

On the 9th day of May, Rosa Rodriguez, widow, filed a bill for partition in the Circuit Court of Hillsborough County seeking to partition certain other lands which

were alleged to have been the property of Manuel Rodriguez at the time of his death. The bill alleged that the lands described in the bill of complaint descended by inheritance to the complainant, Rosa Rodriguez, and the defendants, Inez Mendenez, America Alvarez, Concha Alonzo and Mercedes Reyes who were the daughters of Manuel Rodriguez and that the respective husbands of said daughters were made parties to the suit because of their relationship as husbands respectively of the daughters above named.

The defendants answered and in their answer alleged that the defendants were joint owners with the complainant of lots 8 and 9 of block 54 described in the conveyances heretofore referred to, the contention being that all of the conveyances from the first mentioned conveyance by Manuel Rodriguez and wife, Rose, down to and including the conveyance from Valle and wife to Manuel and Rosa Rodriguez constituted a manipulation of the title to the homestead for the purpose of depriving the children of their interest therein and were void and of no force and effect.

On final hearing the decree entered contained the following:

"IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the title of Rosa Rodriguez in and to Lots Eight (8) and Nine (9) of Block Fifty-four (54) of McFarlane's Addition to West Tampa be and the same is hereby quieted as against the claims of the defendants or either of them, and as against any person or persons claiming by, through or under them or either of them."

The appeal is from this decree. It is contended here that the conveyances above referred to were void and of no force and effect because of the homestead character of the property and because it was the purpose of such

conveyances to deprive the daughters of Manuel Rodriguez of their interest in the homestead.

It is not necessary for us to go further than to say that there is no showing in the record that lots 8 and 9 of block 54 of Macfarlane's Addition to West Tampa, the property described in the conveyances attached, acquired any character or status of homestead until after the last conveyance was made, executed and delivered. The decree from Manuel Rodriguez to Pendas was made and executed and the deed from Pendas to Rosa Rodriguez was made and executed more than four years prior to the date of the conveyance from Rosa Rodriguez and her husband, Manuel, to Valle, and the deed from Valle and wife to Manuel and Rosa Rodriguez. It is not shown that there was any impediment whatever to hinder Manuel Rodriguez from making a valid conveyance of the property in 1919 when the conveyance was made to his wife, Rosa Rodriguez, and this valid title is shown by the record to have remained in her until the conveyances were made and executed in 1923 by which the property became vested in Manuel and Rosa Rodriguez, his wife, as an estate by the entireties. When Manuel dies his wife, Rosa, being the surviving owner of an estate by entireties became vested with the entire fee simple title to the property. For the reasons above stated the opinion and judgment in the case of Bess vs. Anderson, et al. filed Oct. 7th, 1931, and reported 136 So. 898, do not control this case.

If the deeds from Rosa and her husband, Manuel Rodriguez, to Manuel Valle and from Manuel Valle and wife to Manuel and Rosa Rodriguez were an unlawful manipulation of title to property which was then the contemplated home of Manuel and Rosa Rodriguez, it is a matter in which the children of Manuel Rodriguez have no interest because Manuel Rodriguez had more

than four years prior to that time and at a time when the record does not show that the parties contemplated establishing a home on the premises, divested himself of, and conveyed to his wife Rosa, the fee simple title to the property.

The decree appealed from appears to be without error and should, therefore, be affirmed. It is so ordered.

Affirmed.

WHITFIELD, ELLIS AND BROWN, J.J., concur.

WHITFIELD, J., concurring.—The general common law of England is in force in this State except where it is inconsistent with the constitution and laws of the United States or of the State of Florida; and all the laws and ordinances in force in the Territory of Florida to July 22, 1822, are repealed. See Florida Territorial Acts of September 2nd, 1822, and November 6th, 1829; sec. 6, Art. 16, constitution of 1838; sec. 5, Art. 15, constitution of 1861; sec. 6, Art. 16, constitution of 1865; secs 2 and 3, page 21, Thompson's Digest; secs. 7 and 8, page 708; McClellan's Digest, Secs. 59 and 60; Rev. Stats. 1892, Secs. 59 and 60; Gen. Stats. 1906, secs. 87 (71), 88 (72) Comp. Gen. Laws 1927. By Act of Congress approved March 3, 1822, the first legislative council of the Territory of Florida was required to meet at Pensacola, Florida, on the second Monday in June, 1822, but it seems that such legislative council did not in fact convene till July 22, 1822, hence the date stated for the repeal of all laws and ordinances in force in the territory to July 22, 1822. See Act November 6, 1829, Sec. 88 (72) C. G. L.

"The laws and ordinances" that were repealed as above shown were the laws of Spain that were continued in force in the Floridas by the proclamation, and the ordinances promulgated in 1821, by Major General Andrew Jackson, Governor of the Provinces of the Floridas, pursuant to authority conferred by James Monroe, President of

the United States, under an Act of Congress approved March 3, 1821, to carry into execution the Treaty with Spain ceding the Floridas to the United States. See pages 4829 et seq., Annotated Edition, page 75 et seq., Compact Edition, Compiled General Laws, 1927; Proclamation dated July 17, 1821; Ordinance dated July 21, 1821, pages XIV and XX, Statutes of Florida, 1823-25 et seq.

In view of the bove enactments, the civil law of Spain is not in force in this State, except as portions of such civil law may be incorporated in statutory enactments. See Sec. 5865 (3946) C. G. L., Supp. of 1932. As shown above, the common law of England is expressly made a part of the law of Florida; and by the rules of the common law, a conveyance of real estate in fee simple to husband and wife creates an estate by entireties in them, at least where a lawful contrary interest is not duly shown; and at the death of one spouse, the entire estate in the property vests in the survivor. These rules are not inconsistent with the laws of this State and such rules of the common law are the law of this State on that subject. The provision of Section 5482 (3617) Comp. Gen. Laws, 1927, that "The doctrine of the right of survivorship in cases of real estate and personal property held by joint tenants shall not prevail in this State," does not apply to estates by the entireties. See English v. English, 66 Fla. 427, 63 So. 822; Ohio Butterine Co. et al. v. Hargrave et al., 79 Fla. 458, 84 So. 376; Bailey vs. Smith, 89 Fla. 303, 103 So. 833; Ferris-Lee Co. v. Fulghum, 98 Fla. 171, 123 So. 679.

At the death of one spouse the whole estate in property owned by husband and wife as tenants by entireties, is by operation of law vested in the surviving spouse, and the decedent's heirs as such have no inheritable interest in the property, which, if not otherwise duly

disposed of, will descend to the heirs of the survivor upon his or her death.

Section 1, Article X, constitution of 1885, provides that "a homestead to the extent" stated in the section, "owned by the head of a family residing in this State" * "shall be exempt from forced sale under process of any court," with stated exceptions not material here. The constitution limits the homestead land area that may be exempted, but it does not define or limit the estates in land to which homestead exemption may apply, therefore, in the absence of controlling provisions or principles of law to the contrary, the exemptions allowed by section 1, Article X, may attach to any estate in land owned by the head of a family residing in this State whether it is a freehold or less estate, if the land does not exceed the designated area and it is in fact the family home place. When the estate or interest of the owner in the homestead land terminates the homestead exemption of such owner therein necessarily ceases.

Under section 2, of Article X, "the exemptions provided for in section 1 shall inure to the widow and heirs of the party entitled to such exemption." This provision can be applicable only when the estate of the owner in the homestead land does not terminate before or at the death of such owner.

Where a family home place is owned by the husband and wife as tenants by entireties, under the common law in force in this State, upon the death of one spouse, the entire estate in the land so owned, is by operation of law vested in the survivor to the exclusion of the heirs of the deceased spouse. Where the husband is the head of the family entitled to a homestead exemption in land owned by the husband and wife as tenants by entireties, his exemption at his death terminates with his estate in the land, which land by operation of law immediately

becomes the sole property of the surviving wife. As the husband's interest in an estate by entireties ceases at his death, it cannot pass to his heirs under the statute, and as they, as such heirs, have no estate or interest in the land, there is no exemption to inure to them under the constitution. If the widow acquires and retains homestead exemption rights in property after the death of the husband, such exemption if existing at her death would inure to her heirs. Sec. 2, Art. X, constitution.

BUFORD, C.J., AND ELLIS, TERRELL, BROWN AND DAVIS, J.J., concur.