64 So.2d 309 (1953)
WILSON et al.
v.
FLORIDA NAT. BANK & TRUST CO. AT MIAMI et al.
Supreme Court of Florida, en Banc.
March 13, 1953.
Rehearing Denied April 18, 1953.
*310 Redfearn & Ferrell, Miami, for appellants.
Ward & Ward, Miami, for appellees.
Padgett & Teasley, Miami, for appellee, Onie Fuchs.
HOBSON, Chief Justice.
Charles T. Fuchs died a resident and citizen of Dade County, Florida, on December 31, 1949, leaving as his only heirs his widow, Onie Fuchs, and his daughter, Jane Fuchs, who later married George Wilson and is now known as Jane Fuchs Wilson. She was the daughter of the decedent Charles T. Fuchs by his first wife from whom he was divorced in 1934. In 1936 Mr. Fuchs married the appellee, Onie Fuchs, and thereafter they lived in property owned by the latter in the City of Coral Gables. When approximately 9 years of age Jane Fuchs came to live with her father and his second wife, Onie Fuchs.
A five-acre tract of land situate in Dade County, Florida, was acquired on March 27, 1937, by deed executed to Charles T. Fuchs and Onie Fuchs, husband and wife, which created an estate by the entirety. The legal description of this parcel of land is the E 1/2 of the NW 1/4 of the NE 1/4 of the SW 1/4 of Sec. 36, Twp. 54, S., R. 40 E. Charles T. Fuchs placed a house on this five-acre tract and he, Onie Fuchs, and his daughter, Jane, lived therein until Mr. Fuchs' death, at which time Jane had passed her twenty-first birthday.
It is deemed appropriate to observe at this juncture the record discloses that a small portion of the house extended beyond the boundaries of the five acre tract; the pump and well which furnished the house with water are located outside the boundary lines of the five-acre parcel; the septic tank and sewage disposal pipes used in connection with the home are on the five acres to the west of the entirety tract; and the fence which was erected by Mr. Fuchs surrounded the entire forty acres.
On January 29, 1937, Charles T. Fuchs acquired by deed, in which he alone was the grantee, approximately 30 acres of land described as the E 1/2 of the NE 1/4 of the SW 1/4 and the SW 1/4 of the NE 1/4 of the SW 1/4 of Sec. 36, Twp. 54, S., R. 40 E.
Subsequently, on March 11, 1938, another tract containing approximately five acres was acquired by deed executed to Charles T. Fuchs as the only grantee. The legal description of this tract of land is the W 1/2 of the NW 1/4 of the NE 1/4 of the SW 1/4 of the same Sec. 36.
Taken together, these three pieces of land which are contiguous parcels constitute a forty acre tract in the shape of a square. None of this property is within the corporate limits of any city or town.
Charles T. Fuchs left a will dated February 4, 1948, which was probated on January 6, 1950. He named the Florida National Bank & Trust Company at Miami, *311 Rex Faust and Harold P. Ward as executors and they duly qualified. The widow dissented from the provisions of the will and elected to take dower.
Section 2 of the will of Charles T. Fuchs reads as follows:
"Section Two: I have taken into consideration the fact that my home place known as `Jungle Acres' which is now my homestead, will not pass under the terms of this my Last Will and Testament but will pass under the Statutes of the State of Florida. It is my wish, however, and I hereby direct that my executors pay, as soon as convenient, any and all taxes outstanding on my said homestead and any mortgages, liens or other indebtedness against said homestead."
Apparently the entire forty-acre tract was referred to and known as "Jungle Acres."
This litigation revolves around the thirty-five acres. There is no question that the five acre tract upon which the home was located passed to the widow by operation of law because it was owned by the parties during the lifetime of Mr. Fuchs as an estate by the entirety. It is the contention of Onie Fuchs that the thirty-five acres were part of the general estate of the deceased and subject to her claim of dower because at the death of Mr. Fuchs the five acre plot upon which the home proper was located vested in her absolutely as an estate by the entirety with the result that the homestead, if it ever extended to the thirty-five acre tract, was completely destroyed.
On the other hand, the daughter, Jane Fuchs Wilson, takes the position that the thirty-five acres were actually part of the homestead, retained that character up to the very moment of Mr. Fuchs' death and that the title thereto should descend under the statutes pertaining to the descent of homestead property and not under the general laws of descent.
The widow made demand on the executors for the allotment of dower to her in said thirty-five acres and the daughter objected thereto.
The executors then filed their complaint for declaratory decree in this case, asking the court to determine through a declaratory decree whether or not said thirty-five acres were subject to dower. The defendants named in this case were Onie Fuchs, the widow, and Jane Fuchs Wilson, the daughter, and her husband, George Wilson.
The widow, Onie Fuchs, filed her answer seeking to have said thirty-five acres declared a part of the general estate of the deceased in which she could claim her dower interest. The daughter and her husband filed their answer, contending that the thirty-five acres constituted part of the homestead and descended according to the laws pertaining to the descent of homesteads and that the widow was not entitled to dower in said thirty-five acres.
The case was referred to a master, who took testimony and made his report as to both the facts and the law.
The master's findings were, in part, as follows:
"No authority can be found to justify the continued existence of homestead rights in property formerly comprising a homestead when a portion thereof occupied as a residence has been removed. The homestead right in this instance arose by reason of the ownership and the fact that Fuchs occupied same as the head of a family consisting of himself, his daughter, and his wife. Certainly had Fuchs and his wife sold the five (5) acre tract constituting the estate by the entireties, during his lifetime, the remaining thirty-five (35) acres would have lost its homestead status. Carried to its logical conclusion it would therefore seem that when by operation of law the five (5) acre tract held as an estate by the entireties became the fee simple property of the widow, not subject to claims against the estate or the rights of lineal descendants, the remaining thirty-five (35) acres was no longer cloaked with a homestead status, but became the property of the estate subject to the laws of descent and distribution, including dower rights of the widow.

*312 "Fuch's interest in the estate by entireties ceased at his death and became the sole property of the surviving wife. She, not being the head of a family, and having no lineal descendants, could dispose of this five (5) acres as she sees fit.
"The inescapable conclusion, it seems to me, is that the homestead which existed during the lifetime of Mr. Fuchs was necessarily contingent upon the status of the five (5) acre tract upon which the house was located and that when by operation of law the title to said five (5) acres became vested absolute in the widow, no homestead could longer exist in the remaining thirty-five (35) acres.
"Conclusion
"I conclude, therefore, as follows:
"(1) That the entire forty (40) acres constituted the homestead during the lifetime of Charles T. Fuchs.
"(2) That upon the vesting of the title to the five (5) acre residential tract in the widow the homestead status of the remaining thirty-five (35) acres ceased.
"Wherefore, I recommend,
"(1) That the five (5) acre tract constituting an estate by the entireties be declared the sole property of Onie Fuchs, free and clear of any homestead claims.
"(2) That the remaining thirty-five (35) acres be declared not to be homestead property.
"(3) That the widow be allotted her dower interest in said thirty-five (35) acres."
After the argument of exceptions, the Circuit Court entered a final decree, dated June 19, 1952, adjudging and decreeing that the thirty-five acres were a part of the general estate of the decedent and subject to the allotment of dower in favor of the widow.
It is from such decree that this appeal is taken.
This Court has repeatedly held that if a husband and wife acquire property as an estate by the entirety, although it be a homestead upon which the husband, the wife and their child or children reside, and remains such until his death, at the time of his death the widow will take the entire property by right of survivorship, to the exclusion of her deceased husband's heirs, and no homestead exemption exists in the property after the death of the husband, unless thereafter the widow becomes the head of her family and continues to occupy the said property with said family as a homestead. Moreover, unless duly alienated by her, the property which passes to her by operation of law upon the death of her husband will, at her death, inure or descend to her heirs. Norman as Executor, etc., v. Kannon, 133 Fla. 710, 182 So. 903. See also Menendez v. Rodriguez, 106 Fla. 214, 143 So. 223; Knapp v. Fredricksen, 148 Fla. 311, 4 So.2d 251 and Denham v. Sexton, Fla., 48 So.2d 416.
Our holdings are very clear insofar as they apply to the five-acre tract upon which the home, that is to say the house proper, is located. This property unquestionably passed to Onie Fuchs, as the surviving spouse, by virtue of the property having been held by her and her husband as an estate by the entirety. Consequently, we now approach the real question in this case, whether the thirty-five acre tract, title to which stood in the name of Mr. Fuchs alone, became subject upon his death to the provisions of the statutes, sections 731.05 and 731.27, pertaining to descent of homestead property.
During the lifetime of Mr. Fuchs the constitutional exemptions from taxation, and forced sales could have been claimed by him as the head of the family on the entire forty acres. Menendez v. Rodriguez, supra; Coleman v. Williams, 146 Fla. 45, 200 So. 207. Even so, it is contended by counsel for appellee Onie Fuchs, it does not necessarily follow that upon Mr. Fuchs' death the thirty-five acres, title to which vested in him alone, retained its homestead character to the point of becoming amenable to the provisions of section 731.27 F.S.A. pertaining to the descent of homestead property, as distinguished from descending under the general laws of descent. In *313 other words, it is counsel's argument that although during his lifetime exemptions from taxation and forced sales may have been properly claimed by Mr. Fuchs on the entire forty acres, this does not mean that the homestead character of the thirty-five acres survived his death.
It is counsel's view that the exemptions accorded homestead property during the lifetime of the head of a family exist only because of the existence of a home upon which the head of the family lives with the other parties who constitute such family; that at Mr. Fuchs' death the five acre tract upon which the home is located, which was the very foundation for any type of homestead in the thirty-five acres, was no longer a homestead because it passed immediately by operation of law to Onie Fuchs. It is argued that, by the same token, the thirty-five acre parcel lost its homestead character because there was nothing left to constitute a basis for the continuation in that property of such homestead character for any purpose.
Apparently this reasoning was applied in this case by the special master as well as the learned Chancellor. We are not, however, inclined to approve it as being sound. The appropriate time for determining the applicability of Sections 731.05 and 731.27, supra, is at the death of the head of the family. If at such time property is homestead property it becomes subject to the provisions of said sections unless said property is held as an estate by the entirety, regardless of the fact that it does not thereafter continue to be a homestead. However, the immunity from forced sale for the debts of the head of the family which the homestead enjoyed during decedent's lifetime continues to exist for the benefit of the widow and lineal descendants. Hinson v. Booth, as Execeutors, etc., 39 Fla. 333, 22 So. 687; Nesmith v. Nesmith, 155 Fla. 823, 21 So.2d 789.
Counsel for Mrs. Fuchs summarizes his contentions by saying: that any claim of homestead in the thirty-five acres was entirely dependent upon the home place, the title to which was jointly held by the husband and wife, as tenants by the entirety; Mr. Fuchs did not have the complete fee in the home for his interest in the home place was nothing more than an interest in entirety and upon his death his right, title or interest, privileges and immunities in the home place, as well as the thirty-five acres, ceased; and every homestead exemption is one which has no separate existence independent of the title which supports it and from which it cannot be separated.
When husband and wife are jointly seized of land they are seized thereof by the entirety per tout and not per my et per tout as are joint tenants. In other words, each owns the whole. Consequently, it cannot be gainsaid that in contemplation of law Mr. Fuchs up to the moment of his death, owned the whole of the five acres and it is admitted by all parties that the title to the thirty-five acres was vested in him alone. It is well established in this jurisdiction that once property acquires the status of a homestead such characteristic continues to attach to it unless the homestead be abandoned or alienated in the manner provided by law. Clark v. Cox, 80 Fla. 63, 85 So. 173. We have no difficulty in determining from the record that during Mr. Fuchs' lifetime the homestead consisted of the entire forty acre tract. No abandonment of the homestead is made to appear, nor was it alienated as provided by law. Section 731.27 F.S.A. comes into play upon the death of the head of the family if the property owned by him is homestead property and he is survived by a widow and lineal descendants. It cannot be said that the homestead character of the thirty-five acres was destroyed by the death of Mr. Fuchs and then use that assertion as a basis for concluding that Section 731.27, supra, is inapplicable for, indeed, such reasoning would result in all cases in destroying the effect of said section. All homestead property loses forever its character as such when the head of the family dies unless it is reinvested with such character by virtue of some other person becoming the head of the, or a, family and residing thereon with other members of such family.
Since the entire forty-acre tract at the time of Mr. Fuchs' death was homestead property the thirty-five acre plot descended under the provisions of Section 731.27, supra, regardless of the fact that the complete fee in the five-acre tract upon which *314 the home proper was almost entirely located descended to Mrs. Fuchs by operation of law.
We are forced to reverse the decree entered by the Chancellor with directions that he enter a decree declaring that the thirty-five acres were actually a part of the homestead at the time of the death of Mr. Fuchs; that title thereto descended under Section 731.27, supra, and that it is not subject to the widow's claim for dower but that she took a life estate in said property by virtue of the force and effect of the statute aforecited.
Counsel for appellants take the position that the Chancellor erred in taxing the costs against the plaintiffs (the executors) because the effect thereof was to place the burden of paying the costs upon Jane Fuchs Wilson who is the only beneficiary represented by the executors as such, in view of the fact that Mrs. Fuchs elected against the will. It is our conclusion that the executors were justified in filing the complaint for a declaratory decree and that the litigation actually developed between the real parties at interest by virtue of good faith positions taken by both the widow and Jane Fuchs Wilson. Consequently, and in view of our reversal, the Chancellor is further directed to assess the costs equally betwen the executors and Mrs. Onie Fuchs.
Reversed with directions.
TERRELL, THOMAS, SEBRING, ROBERTS and MATHEWS, JJ., concur.
DREW, J., dissents.