**Bernard SEPHUS and George LaFleche, Plaintiffs,**

**v.**

**Peter GOZELSKI, Gozelski Farms; Elijah Hunter; Louise Hunter; and Johnnie Raider, a/k/a Johnnie Prather, Defendants.**

**and**

**Elijah HUNTER and Louis Hunter, Third Party Plaintiffs,**

**v.**

**Robert M. HUSTEAD, Third Party Defendant.**

No. 83–2606–Civ.

United States District Court,
S.D. Florida,
Miami Division.

April 29, 1987.

---

Edna E. Canino, Miami, Fla., for third party plaintiffs.

Robert M. Hustead, Homestead, Fla., for third party defendant.

## MEMORANDUM OPINION CONTAINING FINDINGS OF FACT AND CONCLUSIONS OF LAW

ARONOVITZ, District Judge.

THIS CAUSE was heard in a non-jury trial on April 2 and 3, 1987. The Court received exhibits, heard testimony from both expert and lay witnesses, and the arguments of respective counsel, and having carefully considered all of the evidence, pertinent portions of the record, and the applicable law, the Court enters herein its Memorandum Opinion Containing Findings of Fact and Conclusions of Law.

### The Nature of the Action

This is a third party action challenging the processes by which Third Party Plaintiffs' property was sold to satisfy a registered foreign judgment. Jurisdiction of this cause is based upon 28 United States Code Section 1963.

All Findings of Fact Contained herein are adopted as Conclusions of Law as applicable and, alternatively, all Conclusions of Law contained herein are adopted by the Court as Findings of Fact as applicable.

### Findings of Fact

1. On October 19, 1983, the Plaintiffs, Bernard Sephus and George LaFleche, by and through their attorney, Robert M. Hustead, and pursuant to 28 U.S.C. § 1963, registered with this Court, a civil money final judgment issued by the United States District Court for the Western District of New York; Case No. 81–814B (C), against Third Party Plaintiffs, Elijah Hunter and Louise Hunter, in the amount of $6,000.00. Said New York judgment was certified before this Court as having been issued on October 28, 1982, and having become final and unappealable in the New York court.

2. On October 19, 1983, this Court issued a Writ of Execution against the Hunters for the amount of $6,000.00 ordering them to pay and satisfy the civil money judgment in favor of the Plaintiffs, Sephus and LaFleche. In connection therewith, Plaintiffs filed Marshal's Form 285 instructing the Marshal to execute "Property" by way of a Marshal's sale. There is no indication on Form 285 of the location of the "Property" to be executed upon and no specific instructions to the Marshal of any kind.

3. A Notice of U.S. Marshal's Sale was published in the Miami Review in the issues of December 20, 27, 1983 and January 3, 10, 1984 giving notice that real estate described as Lot 10, Block 5 of Biscayne River Gardens according to the Plat thereof, recorded in Plat Book 49, Page 53, Public Records of Dade County, Florida would be sold at public auction to the highest and best bidder on January 11, 1984.

4. The property described in the Notice is a lot belonging to Third Party Plaintiffs Louise and Elijah Hunter as evidenced by

the Warranty Deed, admitted into evidence, dated August 30, 1950 and duly recorded at Page 557 of Book 3329 of the Official Records of Dade County, Florida. The street address of the subject property is 2471 N.W. 152 Terrace, Opa Locka, Florida.

5. As the U.S. Marshal's return of the writ of execution indicates, the subject property was sold on January 11, 1984 to Robert M. Hustead as the "best and highest bidder for $20.00." There is no indication on the return that Mr. Hustead was acting for or on behalf of his clients Sephus and LaFleche at the time of the sale.

6. Thereafter, on March 24, 1984, pursuant to the execution sale, the U.S. Marshal issued a Marshal's Deed of the subject property to and in the name of Robert M. Hustead.

7. Aside from the Notice by Publication, there was no attempt to notify the Hunters of the execution sale.

8. The Hunters were never personally notified of the execution sale in any way.

9. Situated on the subject property is a house in which the Hunters resided from 1950 to 1983.

10. The Hunters are elderly migrant farm workers who must seasonally travel north to follow the crops as they mature.

11. Although the Hunters reside away from their house in Opa Locka for approximately half the year, they always return to Opa Locka and consider this home to be their permanent residence as evidenced by the following:

(a) Both Mr. and Mrs. Hunter have Florida driver's licenses indicating the address 2471 N.W. 152 Terrace, Opa Locka, Florida;

(b) Each year before departing for their annual migration, the Hunters secure the house, drape the furniture, spread moth balls on the carpets and arrange for yard servicing;

(c) The Hunters annually filed for homestead exemption for the subject property for tax purposes;

(d) The Hunters owned an automobile in 1983 which was registered in Dade County;

(e) The Hunters maintained a bank account in Opa Locka, Florida;

(f) The Hunters kept their personal belongings in the house at Opa Locka, Florida.

12. Despite their frequent trips, there is no evidence that the Hunters ever intended to abandon the subject property.

13. While on their trips north, the Hunters arranged to have their mail forwarded to them.

14. Both Mr. and Mrs. Hunter have worked as migrant farm workers during their marriage. They are mutually dependent for support and are childless.

15. Subsequent to receipt of the Marshal's deed, Robert Hustead filed an ejectment action in the Circuit Court in and for Dade County, Florida, against the Hunters; Case No. 84–16743 CA 27.

16. As a consequence of that action, a Final Default Judgment in Ejectment was entered on July 12, 1984.

17. The parties dispute whether the Hunters were served with process of that ejectment action. Mr. Hunter has filed the Affidavits of a process server indicating that Mr. and Mrs. Hunter were served by individually serving Mrs. Hunter on May 11, 1984. Both Mr. and Mrs. Hunter, on the other hand, testified that they were in Bradenton, Florida, on May 11, 1984 and were never personally served with process of the ejectment action. Taking all testimony and evidence into consideration, the Court views the Hunters as credible witnesses and resolves this factual dispute in favor of the Hunters.

18. As a result of the ejectment action, the Hunters' personal property was removed from their house while they were out of town.

19. Since that time, Mr. Hustead has been managing the subject property as rental property for a period of approximately 18 months, has been receiving rental income during that period, and has made reasonable expenditures to prevent deterioration of the property.

20. Mr. Hustead has not satisfied the judgment upon which execution was based.

## CONCLUSIONS OF LAW

The Court's jurisdiction over this matter is based upon 28 U.S.C. § 1963 which permits registration in this district of any judgment entered in any other district court of the United States.[1] "A judgment so registered shall have the same effect as a judgment of the district court of the district where registered and may be enforced in like manner." The New York judgment, then, may be enforced by this Court by the same procedures as a judgment entered in this district.

In accordance with Federal Rule of Civil Procedure 69, process to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise. That Rule further provides:

> The procedure on execution, in proceedings supplementary to and in aid of a judgment, and in proceedings on and in aid of execution *shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought,* except that any statute of the United States governs to the extent that it is applicable.

It is clear from Rule 69 that Florida law governs the question of whether the proper procedures were followed on execution, there being no federal statute applicable to the contrary. *Juneau Spruce Corp. v. International Longshoremen's & Warehousemen's Union,* 128 F.Supp. 697 (D.C. Hawaii 1955).[2]

■ Turning to Florida law, Florida Statutes Section 56.21 (1982) governed the procedures to be followed for execution sales at the time of the events herein. That statute provides:

Notice of all sales under execution shall be given by advertisement once each week for 4 successive weeks in a newspaper published in the county in which the sale is to take place.... On or before the date of the first publication or posting of the notice of sale, *a copy of the notice of sale shall be furnished by certified mail* to the attorney of record of the judgment debtor, or *to the judgment debtor at the judgment debtor's last known address* if the judgment debtor does not have an attorney of record.

(Emphasis added). The provision for mailing a copy of the notice of sale to the judgment debtor as highlighted was added to Florida's statute in response to the Florida Supreme Court's decision in *Quay Development, Inc. v. Elegante Building Corp.,* 392 So.2d 901 (Fla.1981) in which the Florida Supreme Court held that notice of execution sale of property by mere publication failed to give adequate notice to the owner of the property and constituted a deprivation of property without due process of law. Without *actual* notice of the sale, the *Quay* Court reasoned, the debtor was deprived of the opportunity to raise objections to the proceeding, pay the debt prior to the sale or, at the very least, to attend the sale and bid on the property himself. *Id.* at 903–04. The Court concluded that "[t]he constitutional infirmity could have been remedied by the simple mailing of a letter." *Id.* (citations omitted).

So, too, the present dispute could have been avoided by the simple mailing of a letter. Mr. Hustead, attorney for Sephus and LaFleche and Third Party Defendant herein, testified at trial that he believed he mailed the Hunters a demand letter at some point in time. He also testified that

---

**1.** Robert Hustead argued during the course of trial that this Court lacked jurisdiction over him as Third Party Defendant because diversity of citizenship between himself and the Hunters was lacking. 28 U.S.C. Section 1963 provides the Court with an independent basis for jurisdiction over the subject matter of the third party action. *See Ohio Hoist Mfg. Co. v. Lirocchi,* 490 F.2d 105 (6th Cir.), *cert. denied,* 417 U.S. 938, 94 S.Ct. 2654, 41 L.Ed.2d 661 (1974).

**2.** Although 28 U.S.C. §§ 2001 and 2002, entitled "Sale of realty generally" and "Notice of sale of realty," respectively, are contained within Chapter 127 entitled "Executions and Judicial Sales," these provisions are only applicable in judicial sales. *Weir v. United States,* 339 F.2d 82 (8th Cir.1964). *See also Yazoo & M.V.R. Co. v. City of Clarksdale,* 257 U.S. 10, 42 S.Ct. 27, 66 L.Ed. 104 (1921). A judicial sale differs from an execution sale in that it is conducted pursuant to directions of the court and federal statutes, whereas an execution sale is by mere praecipe of the judgment creditor. *United States v. Branch Coal Corp.,* 390 F.2d 7 (3d Cir.1968).

prior to the execution sale, he informed the U.S. Marshal's office verbally of the Hunters' last known address. Mr. Hustead was aware that the Hunters were frequently out of town because of the nature of their work and that the subject property was the Hunters' last known address.

There is no indication in the record that the Hunters were mailed notice of the sale of their property. Mr. Hustead testified that he had no personal knowledge of any such mailing either by himself or the Marshal's office. The Hunters testified that they were out of town at the time of the execution sale and never received actual notice of the sale beforehand.

Mr. Hustead seeks to excuse the lack of actual notice to the Hunters by the fact that he assumed it was the Marshal's duty to provide notice of the sale by certified mail to the Hunters. While it is true that Florida Statutes Section 56.21 is silent as to where responsibility for mailing the notice lies,[3] Florida's decisional law is clear that equitable jurisdiction may be invoked to vacate an execution sale where there was a mistake or irregularity in the sale of the property which actually prejudiced an interested party or caused an inadequate bid. *McAlice v. Andersen*, 403 So.2d 563 (Fla. 3d DCA 1981); *Flagship State Bank of Jacksonville v. Carantzas*, 352 So.2d 1259 (Fla. 1st DCA 1977), *cert. denied*, 361 So.2d 830 (1978). Regardless of who should have mailed the Hunters notice, the fact remains that they were not noticed and they were actually prejudiced thereby.

To permit the Marshal's sale to stand would be particularly harsh under the circumstances of this case because the Hunters claim that the subject property is a constitutionally protected homestead. The Florida Constitution of 1968,[4] article x, section 4(a) provides in part that:

**3.** Florida has since enacted the Florida Enforcement of Foreign Judgments Act, Florida Statutes Section 55.501–55.509, which places a dual responsibility on the Clerk of Court and on the judgment creditor to give notice of the recordation of the judgment to the debtor. Fla. Stat. Section 55.505.

**4.** The parties have stipulated in their Bilateral Pretrial Stipulation that the Florida Constitution of 1968 controls the homestead issue herein.

There shall be exempt from forced sale under process of any court, and no judgment, decree or execution shall be a lien thereon ... the following property owned by the head of a family ... (1) a homestead ... if located within a municipality to the extent of one-half acres of contiguous land, upon which the exemption shall be limited to the residence of the owner or his family.

The Florida homestead exemption only protects a homeowner who is the "head of a family." The Florida courts have developed two tests to determine family headship: (1) the existence of a legal duty arising out of the family relationship at law; or (2) the maintenance of continuing communal living by at least two individuals under such circumstances that one is recognized as the person in charge. *See Solomon v. Davis*, 100 So.2d 177 (Fla.1958); *Beck v. Wylie*, 60 So.2d 190 (Fla.1952); *Hill v. First National Bank*, 73 Fla. 1092, 75 So. 614 (1917). Between husband and wife, a presumption in law developed that a husband is the head of the family. *See Anderson v. Garber*, 183 So.2d 693 (Fla. 3d DCA 1966).

Although there was no evidence adduced at trial as to which of the Hunters is "in charge," there clearly exists a legal duty arising from the marital relationship and, given the presumption in law, the Court concludes that Elijah Hunter in fact qualifies as a family head for homestead purposes. Additionally, the other elements qualifying the property for homestead exemption are met in that Mr. Hunter is the owner of the property and the property is his residence.[5] *See* Findings of Facts 4, 9, 11 and 12, *supra*.

■ Mr. Hustead argues that the Hunters were afforded an opportunity to raise

**5.** There is normally the further requirement that the "head of the family" and the property owner be one and the same. In this case, Elijah Hunter is not the sole owner of the property, but is joined on the Warranty Deed by his wife, Louise. The one exception to this requirement is where the estate owned by the head of the family is a tenancy by the entirety. Property held by the entireties may qualify for homestead exemption from forced sale for joint debts of the spouses provided that one of them is the

the issue of constitutionally protected homestead in the ejectment action between Mr. Hustead and the Hunters, but failed to, barring the defense in this action under the doctrine of res judicata. Because the establishment of legal title is a prerequisite to an ejectment action in Florida (*see Byrd v. Culver,* 376 So.2d 41 (Fla. 4th DCA 1979)), Hustead argues that the Hunters could and should have raised the constitutional argument at that time.

When one has been given the opportunity to fully present his case in a court and the contested issue is decided against him, "he may not later renew the litigation in another court." *Heiser v. Woodruff,* 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). The Supreme Court has emphasized, however, the importance of careful judicial inquiry prior to utilizing res judicata. *Brown v. Felsen,* 442 U.S. 127, 132, 99 S.Ct. 2205, 2209–10, 60 L.Ed.2d 767 (1979). Under res judicata, a final judgment on the merits of an action precludes the parties from relitigating issues that were or could have been raised in that action. *Allen v. McCurry,* 449 U.S. 90, 94, 101 S.Ct. 411, 414–15, 66 L.Ed.2d 308 (1980). Because the Court concludes that the Hunters were never personally served with process in the ejectment action (see Findings of Fact 17), the Court rejects the argument that the homestead issue "could have been raised."

In view of the foregoing, it is ORDERED AND ADJUDGED as follows:

1.  The writ of execution and U.S. Marshal's sale pursuant thereto are hereby VACATED and is hereby declared null and void, *ab initio.* Accordingly, the Marshal's deed to Robert Hustead is likewise deemed and declared null and void, *ab initio.*[6]

2.  Title is quieted back to Elijah and Louise Hunter as the lawful owners of constitutionally protected homestead property located at 2471 N.W. 152 Terrace, Opa Locka, Florida.

3.  Robert Hustead shall, within thirty (30) days from the date hereof, execute and deliver to the Hunters a Quit-Claim Deed for the property in favor of the Hunters.

4.  Robert Hustead shall, within twenty (20) days from the date hereof, file with the Court an itemized accounting detailing each and every item of income received to date from the property and further detailing each and every expenditure on behalf of the property to date. Such accounting shall be filed together with copies of any and all receipts, statements, invoices, copies of checks, or other indicia of the itemizations.

5.  Elijah and Louise Hunter shall, within twenty (20) days thereafter, file any objections or other responses to such accounting.

6.  In the interim, the Court RESERVES ENTRY OF FINAL JUDGMENT.[7]

7.  The parties shall, within twenty (20) days from the date hereof, file memoranda of law on the issue of whether attorney's fees may be awardable, including the legal basis therefor.

8.  Costs will be awarded to the Hunters. The Final Judgment herein will contain instructions as to the submission of a Bill of Costs.

---

head of a family and all other prerequisites to the exemption are present. *Menendez v. Rodriguez,* 106 Fla. 214, 143 So. 223 (1932). The Warranty Deed here does in fact indicate that title is vested as a tenancy by the entirety.

**6.** Mr. Hustead may not claim "bona fide subsequent purchaser" status to maintain title in the property. Although the Marshal's deed vests title in Mr. Hustead individually, Mr. Hustead testified at trial that he was at all times acting on behalf of his clients, Sephus and LaFleche. The law imputes to an attorney knowledge of all errors, irregularities, and defects in the legal

proceedings for the sale of the property taken under his direction. *Johnson v. McKinnon,* 54 Fla. 221, 45 So. 23 (1907).

**7.** The Court's rulings contained herein shall in no way effect the validity of the New York judgment or its registration in this district by Sephus and LaFleche and shall not impair their rights to enforce same in accordance with law. Likewise, nothing contained herein is to be construed as affecting any and all legally recognized liens that may presently exist against the subject property.