DAVIS, Chief Judge.
Robert Shakespeare challenges certain final judgments entered against him in favor of William Prince. Numerous judgments were entered for monetary damages on various counts, and one judgment was entered to provide the equitable relief of reformation of a deed for real property.[1] Mr. Shakespeare specifically raises claims related to the reformation of the deed and the entry of the monetary judgments for the claims of tortious interference with an expectancy and breach of an antenuptial agreement. We affirm the judgment regarding the reformation of the deed without further comment, but because they are not supported by the record evidence, we must reverse the awards of damages on the claims for tortious interference and breach of an antenuptial agreement and remand for further proceedings.
Robert and Agnes Shakespeare married in 1985. The couple entered into an ante-nuptial agreement to maintain their assets separately. Mrs. Shakespeare had an adult child, William Prince, from a previous marriage. She also had inherited significant assets from another previous marriage. Following their marriage, Mr. and Mrs. Shakespeare purchased a home using a portion of Mrs. Shakespeare’s premarital assets. Subsequent to the purchase, the title to the home was transferred solely into Mrs. Shakespeare’s name. In 1989, she created a revocable trust, Mr. Shakespeare waived homestead rights, and the home became a trust asset. In 2007, Mr. Shakespeare prepared a quit claim deed transferring the house from the trust to him and his wife as a tenancy by the entireties. This deed was signed by Mrs. Shakespeare and her attorney, Joe Cox, in their capacities as cotrustees, and it was immediately recorded.
When Mr. Prince learned of the recorded deed, he met with Mrs. Shakespeare and Mr. Cox. Following the meeting, Mr. Cox prepared a letter to Mr. Shakespeare indicating that despite his discussion of the quit claim deed with Mrs. Shakespeare prior to her signing it, she did not understand the implications of the transfer of title and it was always her intent that Mr. Shakespeare’s interest in the house continue after her death as a life estate interest with a remainder going to Mr. Prince. Following Mrs. Shakespeare’s death, Mr. Prince, individually and in his capacities as trustee and personal representative of his mother’s estate, brought an action against Mr. Shakespeare.
In addition to the reformation of the deed and other judgments for monetary relief not at issue in this appeal, the jury awarded $150,000 to Mr. Prince as personal representative of the estate for the breach of the antenuptial agreement and $150,000 to Mr. Prince, individually, for the tortious interference with an expectancy. Both of these claims were related to Mr. Shakespeare’s role in Mrs. Shakespeare’s quit claim transfer of the property out of the trust and into a tenancy by the entireties with rights of survivorship.
On appeal, Mr. Shakespeare argues that these two awards are not supported by evidence on the record. We agree. *414 See generally Pearce & Pearce, Inc. v. Kroh Bros. Dev. Co., 474 So.2d 369, 871 (Fla. 1st DCA 1985) (“The general rule is that the extent of damages determined by a trial court is a question of fact which will be affirmed on appeal if supported by competent, substantial evidence.”).
Each of the $150,000 awards was based on the allegation in the complaint that Mr. Shakespeare exerted undue influence over Mrs. Shakespeare, causing her to transfer the trust’s entire interest in the property to him and thus preventing Mr. Prince from receiving the future interest in the property that his mother intended for him to receive upon her and Mr. Shakespeare’s deaths. The record indicates through expert testimony that the home was valued at approximately $1,000,000, but there was no evidence introduced to show the difference between the value of the life estate and the value of the future interest. Nor was there any testimony offered to show any other damages that Mr. Prince or the estate incurred as a result of Mr. Shakespeare’s actions, apart from the deprivation of Mr. Prince’s anticipated future interest in the property.
We conclude that the $1,000,000 value of the home alone is not a sufficient basis from which the jury could calculate the damages alleged by Mr. Prince in his complaint.[2] Mr. Prince simply failed to produce evidence of the value of the remainder interest in the property. And although Mr. Prince responds that the two awards at issue were not necessarily based on the deprivation of his future interest in the property, he did not assert any other damages in his complaint or set forth arguments supporting any additional bases for such awards at trial.
Furthermore, in the count of the complaint for breach of the antenuptial agreement, it was alleged that Mrs. Shakespeare’s estate suffered damages due to the deprivation of the value of the home, and the jury awarded damages on that count to Mr. Prince only in his capacity as personal representative of his mother’s estate. But Mrs. Shakespeare specifically excluded the property from becoming an estate asset when she placed it in the trust for the benefit of Mr. Prince.[3] As acknowledged by the complaint, the property was an asset of the trust prior to Mr. Shakespeare’s actions, and by the terms of the trust, the property would be distributed without becoming an asset of the estate. See generally Menendez v. Rodriguez, 106 Fla. 214, 143 So. 223, 225 (1932) (holding that when one spouse dies and the other spouse is the surviving owner of an estate by the entireties, the surviving spouse becomes “vested with the entire fee[ ] simple title to the property”).
Thus, while Mrs. Shakespeare’s removal of the property from the trust based on Mr. Shakespeare’s influence may have deprived the trust of an asset and Mr. Prince of an expectancy and may have been contrary to the intent of the antenuptial agreement, the estate had no expectation of an interest in the property and was not damaged by the signing of the quit claim *415 deed. Therefore, the estate could never recover damages based on the value of the property as alleged in the complaint. We cannot reverse the finding of liability in favor of the estate on the breach of anten-uptual agreement because it is not before us as an issue on appeal, but we must reverse the unsupportable award of damages on that claim. Accordingly we remand for the entry of an award of zero damages on the judgment for breach of the antenuptial agreement.
With regard to the claim of tortious interference, for which damages were awarded to Mr. Prince individually, we must also agree with Mr. Shakespeare that the award is not supported by record evidence. Mr. Prince maintains that the amount is supported by the record because damages on this claim should be calculated using the value of the property as of the date of the interference — the date Mr. Shakespeare had Mrs. Shakespeare sign the quit claim deed — and that this was a value to be considered separately from the damages awarded by the reformation of the deed. Therefore, according to Mr. Prince, the $150,000 award is within the value of the property on the date the quit claim deed was signed and that value was presented at trial.
But assuming that damages are properly calculated as of the date of the tortious interference, Mr. Prince’s damage amount on that date could have only been for the value of the future interest, which is the value of the property minus the value of the life estate. As previously discussed, there was no evidence of this value placed before the jury for consideration. Furthermore, whatever the value of the future interest may be, Mr. Prince received that full value when the deed was reformed and he regained title to the future interest. Any collateral damages he may have incurred in the process of recovering his interest beyond the value of the future interest in the property itself were neither pleaded nor brought forth as evidence at trial. Therefore we also must reverse the damages award on the tortious interference. But unlike the underlying liability issue in the breach of antenuptial agreement claim, Mr. Prince, as an individual party, could recover any damages for the tortious interference claim if they are properly alleged and supported by the trial record. Accordingly, we remand for entry of a judgment for damages in any amount supported by the record and otherwise consistent with this opinion.
Affirmed in part, reversed in part, and remanded.
BLACK and SLEET, JJ., Concur.

. The reformation of the deed was entered in lieu of a $575,000 judgment for breach of fiduciary duty.

. Even adding the two $150,000 awards together with the original $575,000 award on the breach of fiduciary duty claim, which was substituted by the reformation of the deed, does not equal the $1,000,000 value of the property. Furthermore, there is nothing to show that the difference between the total .value of the monetary damages awarded before the reformation of the deed and the value of property would be the value of the life estate Mr. Shakespeare received after the reformation of the deed.

. Under the terms of the trust, upon Mrs. Shakespeare's death, Mr. Shakespeare would retain the right to continue to live at the property until his death, after which title would transfer to Mr. Prince.